**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:  2014-NMCA-016

Filing Date:  October 23, 2013

Docket No. 32,623

STATE OF NEW MEXICO, ex rel.,
CHILDREN, YOUTH AND FAMILIES
DEPARTMENT,

       Petitioner-Appellee,

v.

CHRISTOPHER B.,

       Respondent-Appellant,

and

IN THE MATTER OF SANDRA B. and
CHRISTOPHER B.,

       Children.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**M. Monica Zamora, District Judge**

Charles E. Neelley, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Appellee

Alex Chisholm
Albuquerque, NM

for Appellant

Patricia Anderson
Bosque Farms, NM

1

Guardian Ad Litem

**OPINION**

**HANISEE, Judge.**

**{1}**    Father appeals a district court order terminating his parental rights to his two children (Children) on the grounds of abandonment. Father argues that the judgment should be set aside as a matter of due process because he was not given notice or an opportunity to participate in two permanency hearings related to separate allegations of abuse or neglect that preceded the termination of parental rights hearing, of which he was notified and present. Father does not appeal the district court's ruling that he abandoned Children or argue that he was denied due process at the termination hearing. Father solely asserts that the district court erred in terminating his parental rights without first providing him with notice and an opportunity to participate at the permanency stage of the abuse and neglect proceedings. However, we determine that Father's participation in hearings regarding abuse and neglect could not have reasonably altered the court's unchallenged findings of abandonment, which served as the basis upon which termination was premised. Thus, we conclude that Father did not suffer a due process violation and affirm the district court's termination of parental rights premised upon abandonment.

**I.    BACKGROUND**

**{2}**    This case arose when law enforcement conducted a welfare check and discovered Children living in deplorable conditions in a residence with seventeen other children. On October 7, 2010, New Mexico Children, Youth, and Families Department (CYFD) filed a petition alleging abuse and/or neglect by the mother (Mother) of Children. Father was not included as a party in this petition. On December 1, 2010, the district court adjudicated Children as abused or neglected by Mother and ordered CYFD to implement a treatment plan for Mother. On January 31, 2011, the court held an initial judicial review hearing to evaluate Mother's progress with the treatment plan. On February 15, 2011, Father was added as a party to the petition and was served on June 11, 2011. Father was then arrested and incarcerated on charges including criminal sexual penetration in the first degree and criminal sexual contact of a minor; he remained incarcerated throughout the completion of the termination.

**{3}**    On July 28, 2011, the court held an initial permanency hearing as to Mother and accepted CYFD's permanency plan proposing adoption of the two children. This was followed by a second permanency hearing on October 18, 2011, where the district court again approved the adoption permanency plan for the children. Father did not receive notice of either permanency hearing nor was he adjudicated as to the abuse and/or neglect allegations.

**{4}**    Following the court's approval of the permanency plan, CYFD filed a motion to

terminate the parental rights of both Mother and Father on October 27, 2011. The motion alleged that the children had been "abandoned by the parents" and had been abused or neglected. The motion further alleged that throughout the case, Father had not "come forward to claim responsibility for [Children]," had no contact with nor had provided any financial assistance to them, and failed to provide other forms of support for Children. Father's attorney received notice of the termination hearing and filed a motion to dismiss the abuse or neglect petition on the grounds that Father was not properly adjudicated as to the abuse and neglect allegations as required by NMSA 1978, Section 32A-4-19(A)(2009).

{5}     Immediately prior to the termination hearing, on January 30, 2012, the district court granted Father's motion to dismiss the abuse or neglect petition; however, the court found that NMSA 1978, Section 32A-4-28 (2005) did not require an adjudication as to abuse and neglect in order to move forward with the termination. The court further ruled that CYFD would not be permitted to pursue the allegation of abuse or neglect as to Father because it was not sufficiently pleaded in the motion for termination of parental rights. The court, however, permitted CYFD to proceed at the termination hearing on allegations of abandonment as to Father. On September 25, 2012, the court entered a judgment against Father, terminating his parental rights on the basis that he abandoned his children.

## II.     DISCUSSION

{6}     The question of whether an individual was denied due process is a question of law that we review de novo. *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266. "The essence of due process is notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 26, 136 N.M. 53, 94 P.3d 796 (internal quotation marks and citation omitted). In New Mexico, because we recognize a fundamental liberty interest in the right to custody of one's child, parents have a due process right to meaningfully participate in a hearing for the termination of their parental rights. *State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999-NMCA-035, ¶ 25, 126 N.M. 670, 974 P.2d 164. Generally, parents also have a right to receive effective notice and have an opportunity to participate at the permanency stage of an abuse and neglect adjudication involving their child. *See Maria C.*, 2004-NMCA-083, ¶ 34 (holding that, generally, parents have a due process right to participate in a permanency hearing because the opportunity to defend against charges of abuse and neglect may prevent a termination of parental rights). However, a parent's right to be present at a permanency hearing is not absolute. *Id.* ¶ 33. This right only exists where a parent's involvement could aid or benefit the defense, or where prejudice to a liberty interest could be avoided by the parent's presence at the proceeding. *Id.*

{7}     To evaluate a claim alleging a denial of due process, we utilize the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Maria* C., 2004-NMCA-083, ¶ 37. The *Mathews* test requires that we weigh three factors: (1) the parent's interest; (2) "the risk to [the parent] of an erroneous deprivation through the procedures used, and the

probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest. *Id*. We have previously recognized that a parent has a compelling interest in perpetuating the fundamental right to a parent-child relationship. *See id*. Further, in child abuse and neglect cases, the state has "an equally compelling interest in preserving and promoting the welfare of the children." *Id*. Therefore, we must focus our analysis on the second factor of the *Mathews* test, whether the parent suffered a risk of erroneous deprivation given the procedures used and the probable benefit of providing alternative or additional procedures. *See id*. Our determination does not require that a parent show that his presence at the permanency hearing would have generated a successful outcome. *See id*. However, in order to show a denial of due process, we do require the parent to "demonstrate that there is a reasonable likelihood that the outcome *might* have been different[]" had the denied procedure been afforded. *Id*.

**{8}** Father states that "there is a reasonable likelihood that had he been a party to the case and allowed to participate in the permanency plans the outcome would have been different." We recognize that there is a strong correlation between permanency hearings and a termination of parental rights based on abuse and neglect, and there are circumstances where a hearing for the termination of parental rights can be avoided based on the findings in the permanency hearing. *Id*. ¶ 34 ("If parents are not afforded an early opportunity to defend against charges of abuse and neglect before the end stage, termination may very well be a foregone conclusion."). However, Father does not demonstrate how or why his presence at the permanency hearings might have changed the outcome in any way. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). Nor does Father challenge the sufficiency of the evidence in support of the finding of abandonment on appeal. Where Father has no proof to rebut the district court's conclusion that he abandoned Children, we cannot conclude that his presence at the permanency hearings regarding abuse and neglect might have benefitted his defense and changed the outcome of the termination premised on abandonment. *See State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2009-NMCA-039, ¶¶ 30-31, 146 N.M. 60, 206 P.3d 171; *In re C.P.*, 1985-NMCA-102, ¶ 16, 103 N.M. 617, 711 P.2d 894. Father's bald assertion does not satisfy the test for prejudice in *Mathews*.

**{9}** Abuse or neglect and abandonment are separate and independent grounds for the termination of parental rights, and they have a distinct set of statutorily created requirements. *See Benjamin O.*, 2009-NMCA-039, ¶ 30. In cases where the district court adjudicates a child as having been abused or neglected by a parent, CYFD is statutorily required to create a treatment plan for that parent prior to any final determination of parental rights. *See* NMSA 1978, § 32A-4-22(C) (2009); *Benjamin O.*, 2009-NMCA-039, ¶ 30. Upon a district court's approval of the treatment plan, it assesses the parent's progress with the treatment plan at one or more ensuing judicial reviews. *Maria C.*, 2004-NMCA-083, ¶ 18. Following judicial review, a permanency hearing is held to determine the permanent placement of the abused or neglected child. *Id*. ¶¶ 18-19. The overall purpose of the permanency hearing "is to determine what permanency plan is in the child's best interest." *State ex rel. Children, Youth & Families Dep't v. Browind C.*, 2007-NMCA-023, ¶ 24, 141 N.M. 166, 152 P.3d 153.

4

Under the statute, this can include adoption, reunification, or permanent guardianship. *See* NMSA 1978, § 32A-1-4(Q) (2009); *see also Browind C.*, 2007-NMCA-023, ¶ 24.

**{10}**     In cases of abandonment, however, these statutory safeguards are not prescribed. *See Benjamin O.*, 2009-NMCA-039, ¶ 30 ("[The] provisions are silent as to the procedure for allegations of abandonment."). Where a parent has abandoned a child, there is no statutory requirement that a treatment plan be implemented. *See id.* ¶ 31 ("There is no indication that a parent who has abandoned the child must receive services or benefit from a treatment plan.") Therefore, there is no judicial review to be followed by a permanency hearing to determine the placement of the child. *See* 8.10.8.8(C)(1) NMAC ("A plan of reunification is inappropriate in most cases involving abandonment."). In instances of abandonment, the statute solely provides that "[t]he court shall terminate parental rights." Section 32A-4-28(B)(1).

**{11}**     Father theorizes that the result of the termination of parental rights would have been different had he been afforded the opportunity to be present for the permanency hearings; however, we are unpersuaded. Although we recognize that CYFD initially moved to terminate Father's parental rights on abuse or neglect grounds, the district court agreed with Father that the allegations were insufficiently pleaded, and the case proceeded solely on the basis of abandonment. Thus, Father was not subjected to a deprivation of any parental liberty interest associated with the alleged and unproven abuse or neglect of Children by him. *See Maria C.*, 2004-NMCA-083, ¶ 33. Any permanency hearing to which Father could have been present would be relevant only to the allegations of abuse or neglect, which did not serve as the basis for Father's termination. Therefore, any evidence Father could present at the permanency hearing would be relevant only to the determination of where Children should permanently reside. *See Browind C.*, 2007-NMCA-023, ¶ 24.

**{12}**     Abandonment is a stand-alone basis for termination of parental rights. *See* § 32A-4-28(B)(1). While not supportable by simply a finding that a parent was incarcerated during the period of alleged abandonment, *see In re Adoption of Doe*, 1982-NMCA-183, ¶ 26, 99 N.M. 278, 657 P.2d 134, abandonment occurs when a parent leaves a child, under six years of age, for three months without provision for support of that child and without communication. *See* NMSA 1978, § 32A-4-2(A)(2)(a) (2009). Multiple factors may indicate abandonment, including an absence of financial support and a purposeful declination of opportunities to remain in contact with the child or children. *See In re Adoption of Doe*, 1982-NMCA-183, ¶ 26. Although unchallenged by Father, we find support within the record for each of these indicators of abandonment. Because Father's rights were terminated on the basis of abandonment, and because Father concedes that "[t]he issue this case raises is not whether . . . there was substantial evidence" to support the district court's ruling, we cannot conclude that the outcome of the termination of parental rights might have changed. Thus, we determine that, under a *Mathews* analysis, Father has not demonstrated a violation of his due process rights because he has failed to demonstrate that the outcome of the termination might have been different had he been present at the permanency hearing. *See* § 32A-4-28(B)(1)(A) (finding of abandonment serves as a legally sufficient basis for termination).

5

## III.    Conclusion

**{13}**    For the foregoing reasons, we affirm the district court's order terminating Father's parental rights.

**{14}    IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for** _State ex rel. CYFD v. Christopher B._**, No. 32,623**

**APPEAL AND ERROR**
Standard of Review

**CHILDREN**
Termination of Parental Rights

**CONSTITUTIONAL LAW**
Due Process
Notice

**CRIMINAL LAW**
Child Abuse and Neglect

**DOMESTIC RELATIONS**
Abandonment
Neglect and Abuse
Termination of Parental Rights
Unfit Parents