I attest to the accuracy and
 integrity of this document
 New Mexico Compilation
 Commission, Santa Fe, NM
 '00'05- 15:59:02 2016.01.14

 IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2016-NMSC-002

Filing Date: November 19, 2015

Docket No. S-1-SC-34,546

NEW MEXICO DEPARTMENT OF
WORKFORCE SOLUTIONS,

 Petitioner-Appellant,

and

ALBERTSONS,

 Employer,

v.

NANCY GARDUÑO,

 Respondent-Appellee.

ORIGINAL PROCEEDING ON CERTIORARI
Raymond Z. Ortiz, District Judge

New Mexico Department of Workforce Solutions
Marshall J. Ray
Elizabeth A. Garcia
Richard Lawrence Branch
Albuquerque, NM

for Petitioner-Appellant

Rodey Dickason Sloan Akin & Robb P.A.
Jeffrey L. Lowry
Albuquerque, NM

for Employer

New Mexico Legal Aid, Inc.
Alicia Clark

 1
Albuquerque, NM
Timothy R. Hasson
Taos, NM

for Respondent

 OPINION

MAES, Justice.

{1} Following a determination that Respondent Nancy Garduño (Garduño) was ineligible
for unemployment benefits because her employer terminated her for misconduct connected
with her employment, the Cabinet Secretary of the New Mexico Department of Workforce
Solutions (the Department) ordered Garduño to repay $11,256 in overpaid unemployment
benefits. The Court of Appeals majority held that due process precluded the Department
from collecting the overpaid unemployment benefits from Garduño where she received
benefits payments during the ongoing appeals process because she was unaware of her
employer’s appeal for 130 days. See N.M. Dep’t of Workforce Solutions v. Garduño, 2014-
NMCA-050, ¶25, 324 P.3d 377 (Hanisee, J., concurring in part and dissenting in part), cert.
granted 2014-NMCERT-003. We reverse the Court of Appeals and hold that Garduño’s
procedural due process rights were not violated because the Department provided Garduño
with constitutionally adequate procedural protections prior to terminating her benefits and
ordering her to reimburse the Department for the overpaid benefits.

I. FACTS AND PROCEDURAL HISTORY

{2} On February 5, 2010, Albertsons, a grocery store chain, terminated Garduño from
her job as a front-end clerk for violation of the associate-purchase policy, which prohibited
giving away “free merchandise of any kind.” This included giving deep discounts, a practice
called “sweethearting.” Surveillance cameras recorded Garduño charging a coworker and
his wife $2.82 for merchandise that should have totaled approximately $17.00. An
investigation conducted by Albertsons’ management revealed that an incident that occurred
on January 14, 2010, was not an isolated one and that Garduño gave at least one other
employee an unauthorized discount.

{3} Garduño filed for unemployment insurance benefits on February 14, 2010. The
Department’s claims examiner issued a notice of claim determination awarding Garduño
$402 in weekly benefits. The notice stated that the determination was final “unless an appeal
is filed within fifteen calendar days from: 03/12/2010.” Additionally, the notice stated, “If
your employer challenges a decision allowing benefits to you and the appeal decision is
against you, you will be required to repay those benefits.” See 11.3.300.308 NMAC (1/1/03)
On March 26, 2010, Albertsons appealed the claim determination. The Department
continued to pay Garduño benefits during the ongoing appeals process.

 1
{4} The Department did not notify Garduño of the Albertsons appeal until August 3,
2010, when the Department mailed Garduño a notice of hearing. The notice of hearing stated
that “the appeal hearing” in front of the Department’s appeals tribunal was scheduled for
August 19, 2010, and listed the legal issues to be addressed. After receiving the notice of
hearing, Garduño continued filing weekly claims for benefits, collecting an additional $2,010
in unemployment benefits. At the appeal hearing on August 19, 2010, an administrative law
judge (ALJ) began hearing testimony but ultimately elected to continue the hearing to give
Garduño the chance to resubmit documents and request subpoenas. On August 23, 2010, the
Department issued a notice stating that the hearing would resume on September 9, 2010. On
that day, the ALJ heard testimony from Garduño, the store manager, an employee, and the
store’s loss prevention investigator, and considered evidence consisting of written
statements, policies, receipts, and surveillance video. On September 14, 2010, the ALJ
issued a decision disqualifying Garduño from benefits eligibility due to her employee
misconduct. That same day, the Department issued an overpayment notice informing
Garduño of her disqualification from benefits because she had “claimed and received
benefits to which [she was] not entitled,” and she was therefore required to refund the
overpayment, totaling $11,256.

{5} Garduño appealed the ALJ’s decision. The board of review, which provides a
second-tier administrative review of Department decisions, affirmed Garduño’s
disqualification on November 23, 2010. Garduño did not seek review of the board’s
decision. However, she did appeal to the appeals tribunal the Department’s decision to
recoup the $11,256 overpayment. The tribunal held a hearing on December 29, 2010, on the
issue of the overpayment and issued a decision the next day affirming the Department’s
decision to recoup the overpayments. On January 13, 2011, Garduño appealed the tribunal’s
decision to the Department’s cabinet secretary. Citing NMSA 1978, Section 51-1-38 (1993),
the cabinet secretary affirmed the decision of the tribunal on January 28, 2011, and ordered
Garduño to repay the Department for the overpaid benefits.

{6} Having exhausted her administrative remedies, Garduño appealed the cabinet
secretary’s decision to state district court. Garduño asserted that the Department should be
equitably estopped from pursuing collection of overpayments because the Department failed
to comply with federal timeliness standards for processing appeals. Garduño also argued
that the Department violated her right to notice and hearing under the Due Process Clause
of the Fourteenth Amendment. In an order reversing the cabinet secretary’s decision, the
district court held that (1) the appeals tribunal’s hearing, conducted six months after Garduño
started receiving benefits, violated the timeliness requirements for processing appeal claims
under state and federal law; (2) the doctrine of equitable estoppel barred the Department
from claiming and collecting an overpayment from Garduño; and (3) the overpayment claims
process violated Garduño’s due process rights by failing to provide Garduño with timely
notice and hearing. The Department appealed the district court’s order to the Court of
Appeals.

{7} At the time of the Department’s appeal, the Court of Appeals had another pending

 2
case with similar facts. See Millar v. N.M. Dep’t of Workforce Solutions, 2013-NMCA-055,
304 P.3d 427. Despite the Department’s motion to consolidate this case with Millar, the
Court of Appeals decided them separately. See Garduño, 2014-NMCA-050, ¶ 28 n.1
(Hanisee, J., concurring in part and dissenting in part). In Millar, the Court of Appeals
rejected the claimant’s equitable estoppel and federal timeliness regulation arguments,
holding that the claimant did not have “a right to unemployment compensation benefits to
which he was not entitled and which [the Department] has a statutory obligation to recover.”
2013-NMCA-055, ¶¶ 16, 23. Procedural due process was not at issue in Millar. See id. ¶ 1.

{8} After the Millar opinion was filed, a majority of a different Court of Appeals panel
held that Garduño’s federal and state timeliness and equitable estoppel arguments lacked
merit for the same reasons set forth in Millar. See Garduño, 2014-NMCA-050, ¶ 13. The
majority concluded, however, that the Department’s failure to provide Garduño with timely
notice of the employer’s appeal from the notice of claim determination awarding Garduño
benefits violated her right to procedural due process so as to preclude the Department from
collecting the overpaid benefits. Id. ¶¶ 21, 26. Judge Hanisee did “not agree that Garduño’s
due process rights were violated, even assuming she ha[d] a legitimate property interest,”
because the “proceeding was conducted ‘in a reasonable time and manner.’” Id. ¶ 34
(Hanisee, J., concurring in part and dissenting in part). The Department appealed to this
Court. We granted certiorari to consider whether the Court of Appeals erred by (1) holding
that Garduño had a constitutionally protected property interest in unemployment benefits she
received before being found ineligible for such benefits, (2) holding that Garduño’s
procedural due process rights were violated, and (3) providing Garduño with a remedy
contrary to law and the public interest in preserving the unemployment fund.

II. STANDARD OF REVIEW

{9} Generally, we review “an administrative order to determine if it is arbitrary,
capricious, or an abuse of discretion; not supported by substantial evidence in the record; or,
otherwise not in accordance with law.” N.M. Att’y Gen. v. N.M. Pub. Regulation Comm’n,
2013-NMSC-042, ¶ 9, 309 P.3d 89 (internal quotation marks and citations omitted). Because
Garduño did not appeal the Department’s eligibility determination, the only issue on appeal
is the constitutionality of the Department’s procedures leading to the administrative order.
The constitutionality of the Department’s procedures presents this Court with a question of
law, which we review de novo. See Albuquerque Bernalillo Cty. Water Util. Auth. v. N.M.
Pub. Regulation Comm’n, 2010-NMSC-013, ¶ 19, 148 N.M. 21, 229 P.3d 494 (citations
omitted).

III. DISCUSSION

{10} The Due Process Clauses of the United States and New Mexico Constitutions require
the government to afford certain procedural protections prior to depriving any person of a
constitutionally protected interest in life, liberty, or property. See U.S. Const. amend. XIV,
§ 1 (“No State shall . . . deprive any person of life, liberty, or property, without due process

 3
of law.”); N.M. Const. art. II, § 18 (“No person shall be deprived of life, liberty or property
without due process of law.”). Accordingly, “[a]dministrative hearings that affect a property
or liberty interest must comply with due process.” Archuleta v. Santa Fe Police Dep’t ex rel.
City of Santa Fe, 2005-NMSC-006, ¶ 31, 137 N.M. 161, 108 P.3d 1019.

{11} In New Mexico state courts, “[t]he Mathews test is the appropriate analytical
framework for a due process issue.” Archuleta, 2005-NMSC-006, ¶ 31 (citation omitted).
The Mathews test evaluates the following factors: (1) “the private interest that will be
affected by the official action;” (2) “the risk of erroneous deprivation of such interest
through the procedures used, and the probable value, if any, of additional or substitute
procedural safeguards;” and (3) “ the Government’s interest, including the function involved
and the fiscal and administrative burdens that the additional or substitute procedural
requirement would entail.” Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47
L.Ed.2d 18 (1976).

A. New Mexico’s Unemployment Compensation Law creates a constitutionally
 protected property interest in unemployment benefits

{12} The first factor of the Mathews test requires considering the private property interest
affected by state action. See Mathews, 424 U.S. at 335, 340-43. “[C]onsideration of what
procedures due process may require under any given set of circumstances must begin with
a determination of the precise nature of . . . the private interest that has been affected by
governmental action.” Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S.
886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The Department argues that Garduño does
not have a property interest in overpaid benefits because she failed to appeal the question of
her eligibility. The Department agrees that an individual can have a constitutionally
protected property interest in unemployment benefits that are improperly denied, but here,
Garduño was deemed ineligible for the benefits and has never challenged that determination.
 Garduño contends that the interest of an individual in continued receipt of governmentally
created benefits is a constitutionally protected “property” interest. Garduño argues that, once
the Department issued a notice finding her eligible for unemployment benefits, she had a
protected property right in the those benefits. We hold that Garduño acquired a
constitutionally protected property interest in unemployment benefits when she began
receiving payments and that Garduño’s retention of those benefits cannot be terminated
without due process.

{13} Property interest in a benefit was defined by the United States Supreme Court in
Board of Regents of State Colleges v. Roth:

 To have a property interest in a benefit, a person clearly must have more than
 an abstract need or desire for it. He must have more than a unilateral
 expectation of it. He must, instead, have a legitimate claim of entitlement to
 it. It is a purpose of the ancient institution of property to protect those claims
 upon which people rely in their daily lives, reliance that must not be

 4
 arbitrarily undermined.

408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests “are created and
their dimensions are defined by existing rules or understandings that stem from an
independent source such as state law–rules or understandings that secure certain benefits and
that support claims of entitlement to those benefits.” Id.

{14} A statutory scheme providing for the receipt of government benefits may give rise
to property interests protected by the due process clause. In Mathews, the United States
Supreme Court determined that the private interest affected by state action was the
claimant’s continued receipt of benefits, which was a source of income, pending a final
decision on his claim for Social Security disability benefits. See 424 U.S. at 339-40.
Similarly, a private interest affected by state action is a claimant’s continued receipt of
welfare benefits. See Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct 1011, 25 L.Ed.2d 287
(holding that “the pre-termination hearing has one function only; to produce an initial
determination of the validity of the welfare department’s grounds for discontinuance of
payments in order to protect a recipient against an erroneous termination of his benefits.”
(citations omitted)); Roth, 408 U.S. at 576 (“a person receiving welfare benefits under
statutory and administrative standards defining eligibility for them has an interest in
continued receipt of those benefits that is safeguarded by procedural due process.” (citations
omitted)); see also Wilkinson v. Abrams, 627 F.2d 650, 664 (3d Cir. 1980) (“State statutes
providing for the payment of unemployment compensation benefits create in the claimants
for those benefits property interests protected by due process.” (citation omitted)).

{15} New Mexico’s Unemployment Compensation Law articulates the great importance
of this source of income to unemployed claimants. See NMSA 1978, § 51-1-3 (1936) (“[The
purpose of the statute is to] lighten [the] burden which now so often falls with crushing force
upon the unemployed worker and [the worker’s] family.”). Lacking independent resources,
a claimant’s “need to concentrate upon finding the means for daily subsistence . . . adversely
affects his ability to seek redress from the [state’s] bureaucracy.” Goldberg, 397 U.S. at 264.
Unemployment benefits are significant to the recently unemployed worker because they
“give prompt if only partial replacement of wages to the unemployed, to enable workers to
tide themselves over, until they get back to their old work or find other employment, without
having to resort to relief.” Cal. Dep’t of Human Res. Dev. v. Java, 402 U.S. 121, 131, 91
S.Ct. 1347, 28 L.Ed.2d 666 (1970) (internal quotation marks, citation, and footnote omitted)
(discussing the legislative purpose behind the Federal unemployment insurance scheme).
Further, “[u]nemployment benefits provide cash to a newly unemployed worker at a time
when otherwise he would have nothing to spend, serving to maintain the recipient at
subsistence levels . . . .” Id. at 131-32 (internal quotation marks, citation and footnote
omitted). The security provided by unemployment benefits during a period of unemployment
is also important in “assisting a worker to find substantially equivalent employment . . .
[because] [t]hey should not be doing anything else but looking for a job.” Id. at 132 (internal
quotation marks omitted).

 5
{16} Because New Mexico’s unemployment compensation scheme provides for the
payment of unemployment compensation benefits, see generally NMSA 1978, §§ 51-1-1 to
-59 (1936, as amended through 2013); 11.3.300 NMAC (07/15/1998, as amended through
07/31/2013) (specifying the administration of unemployment benefits claims), claimants for
such benefits possess a property interest protected by due process. See Wilkinson, 627 F.2d
at 664 (“State statutes providing for the payment of unemployment compensation benefits
create in the claimants for those benefits property interests protected by due process.”
(citation omitted)); Roth, 408 U.S. at 576 (“The Fourteenth Amendment’s procedural
protection of property is a safeguard of the security of interests that a person has already
acquired in specific benefits.”).

{17} The Court of Appeals majority concluded that “Garduño has a property right in
receiving unemployment benefits by virtue of the Unemployment Compensation Law.”
Garduño, 2014-NMCA-050, ¶ 17 (citations omitted). Judge Hanisee disagreed that Garduño
had a legitimate property interest because she “abandon[ed] any challenge to the Tribunal’s
determination that she was substantively ineligible for unemployment benefits.” Id. ¶ 31
(Hanisee, J., dissenting in part). Judge Hanisee wrote that, “Garduño’s desire to keep—and
not repay to [the Department]—the overpaid benefits does not give rise to a ‘legitimate claim
of entitlement.’ Rather, her interest is of the type disallowed by Roth: that for which a
claimant has an ‘abstract need or desire’ or a ‘unilateral expectation.’” Id. (citations omitted).

{18} The characterization of Garduño’s claim makes little difference when determining
the existence of a protected property interest. Whether Garduño is seeking to keep her
benefits—benefits she was initially found eligible for—or whether she is seeking continued
receipt of those benefits is irrelevant. Garduño’s constitutionally protected property interest
in the benefits arose when the claims examiner made the initial eligibility determination and
she began receiving benefit payments. Once this property interest arose, procedural due
process protections began protecting the security of that interest, and the Department could
neither discontinue payments nor recoup earlier payments based on a disqualification and
termination of benefits without affording Garduño due process. Indeed, the United States
Supreme Court has held that “[r]elevant constitutional restraints apply as much to the
withdrawal of public assistance benefits as to disqualification for unemployment
compensation.” Goldberg, 397 U.S. at 262 (citations omitted); see also Wilkinson, 627 F.2d
at 664–65 n.18 (“Our conclusion that claimants for state unemployment compensation
benefits have a protected property interest applies no less to claimants, like the Wilkinson
class, seeking to establish eligibility in the first instance, than to claimants . . . seeking to
establish continued eligibility.” (citation omitted)).

{19} We affirm the Court of Appeals’ holding that “Garduño has a property right in
receiving unemployment benefits by virtue of the Unemployment Compensation Law.”
Garduño, 2014-NMCA-050, ¶ 17 (citations omitted). Judge Hanisee is correct that Garduño
did not challenge the substantive determination that she was ineligible for benefits. But that
alone does not give the Department authority to terminate and recoup her unemployment
benefits without affording Garduño due process. The next step in our procedural due process

 6
analysis is to determine whether the Department employed constitutionally adequate
procedures in depriving the claimant of that interest. See Tri-State Generation &
Transmission Ass’n, Inc. v. D’Antonio, 2012-NMSC-039, ¶ 38, 289 P.3d 1232.

B. There was no due process violation where there was neither erroneous
 procedural deprivation of the private interest nor probable value in the
 additional or substitute procedural safeguards

{20} The second Mathews test requires examining both the risk that the private interest
will be erroneously deprived with the procedures used and any probable value of additional
or substitute procedural safeguards. See Mathews, 424 U.S. at 335.

1. Erroneous procedural deprivation

{21} In examining the potential risk of erroneous deprivation, we look to the procedures
as a whole. See In re Comm’n Investigation Into 1997 Earnings of U.S. West Commc’ns,
Inc., 1999-NMSC-016, ¶ 26, 127 N.M. 254, 980 P.2d 37 (citations omitted). To prevent
erroneous deprivation in the administrative context, due process requires “‘reasonable notice
and opportunity to be heard and present any claim or defense’.” Rayellen Res., Inc. v. N.M.
Cultural Props. Review Comm., 2014-NMSC-006, ¶ 20, 319 P.3d 639 (citation omitted); see
also Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 31-14, 70 S.Ct. 652, 94 L.Ed
865 (1950) (requiring that an adjudication for deprivation of property “be preceded by notice
and opportunity for hearing appropriate to the nature of the case”). However, “constitutional
due process does not require an agency to afford a petitioner all elements of a traditional
judicial proceeding.” Archuleta, 2005-NMSC-006, ¶ 32 (citing Miller v. County of Santa
Cruz, 796 F. Supp. 1316, 1319 (N.D. Cal. 1992), aff'd, 39 F.3d 1030 (9th Cir. 1994)).

{22} Because Garduño did not challenge the substantive determination that she was
ineligible for benefits, this is not the usual procedural due process case involving a
prehearing deprivation of benefits. Garduño does not argue that she was deprived of her
benefits by a lack of process provided in the hearing. The essence of her deprivation is that
she continued to receive the benefits during the ongoing appeals process unaware of her
employer’s appeal for 130 days and that she was actually incurring a debt. According to
Garduño, “[d]ue process requires prompt notice with the opportunity to be heard at a
meaningful time and in a meaningful manner.” She points to an alleged deficiency in notice
and hearing and argues that she should have received an earlier notice and hearing.

{23} We are therefore called to assess the significance of prompt notice and disposition
of first-level appeals on a claimant’s interest in unemployment benefits when the initial
determination found the claimant eligible and the claimant received benefit payments
through the first level of administrative appeal. The New Mexico Unemployment
Compensation statute provides that upon appeal by any party of a initial determination of
eligibility, the Department must provide a “reasonable opportunity for a fair hearing.”
NMSA 1978, Section 51-1-8(D) (2013, amended in 2015). The Department’s regulations

 7
further provide that “[o]nce an initial determination is made and payment of benefits is
begun, payments shall not be stopped without prior notice and an opportunity to be
heard . . . .” 11.3.300.308(E) NMAC (1/1/2003).

{24} Notice is important to due process because the “right to be heard has little reality or
worth unless one is informed that the matter is pending and can choose for himself whether
to appear or default, acquiesce or contest.” Mullane, 339 U.S. at 314. “Due process does not
require the same form of notice in all contexts; instead, the notice should be appropriate to
the nature of the case.” Rayellen, 2014-NMSC-006, ¶ 19 (internal quotation marks and
citations omitted). Put simply, we must determine whether the notice was “reasonably
calculated, under all the circumstances, to apprise interested parties of the pendency of the
action and afford them an opportunity to present their objections.” Mullane, 339 U.S. at 314
(citations omitted).

{25} The goal of the Unemployment Compensation Law, and the importance behind
unemployment benefits, centers around promptly providing support for the innocent workers
who have become unemployed through no fault of their own. See Section 51-1-3. The Court
of Appeals in Millar observed that this system “necessarily results in some payments being
made upon an initial determination of eligibility that are subsequently overturned. As a
result, the [Department] advises the claimant that if the appeal decision is against him, he
will be required to repay the benefits received.” 2013-NMCA-055, ¶ 8.

{26} We agree with the Court of Appeals in Millar that “prompt payment is not the only
consideration of procedural fairness to a claimant[;] prompt notice of benefits being in
jeopardy must be [considered] as well.” 2013-NMCA-055, ¶ 17. However, the importance
in avoiding administrative delay is of less significance where the initial determination is one
of eligibility and the claimant is receiving payments during the appeal process. Here, the
claims examiner’s initial determination concluded that Garduño was eligible, and she
continued to receive benefits until the ALJ’s determination following the hearing at the first
level of appeal. We do not hold that any claim of late notice of an appeal or any late timing
of the hearing cannot result in a due process violation. Instead, our holding requires
weighing a claimant’s deprivation of an important private interest, such as unemployment
benefits, relative to procedures used in such a deprivation. See Welch v. Thompson, 20 F.3d
636, 639 (5th Cir. 1994) (requiring that if there is a deprivation, “we must determine whether
the procedures relative to that deprivation were constitutionally sufficient.” (citation and
footnote omitted)).

{27} In New Mexico, the distinguishing factor used to determine whether there was or was
not a violation of due process rights depends on whether the defective notice deprived the
claimant of the ability to participate in the proceeding. See Franco v. Carlsbad Mun. Schs.,
2001-NMCA-042, ¶¶ 6, 14, 130 N.M. 543, 28 P.3d 531 (holding that a notice recommending
termination of an employee to the board without notice to the employee of employee’s right
to attend and dispute the claims violated due process), recognized in Lobato v. N.M. Env’t
Dep’t, 2012-NMSC–002, ¶ 13, 267 P.3d 65. There is at least one instance when eventual

 8
notice was deemed constitutionally sufficient in the administrative context because claimant
was not deprived of an opportunity to be heard by participating in the proceeding. In Uhden
v. N.M. Oil Conservation Comm’n a lessee of oil and gas interests provided notice by
publication of two adjudications purporting to increase well spacing on a landowner’s
property, which the landowner did not receive, and subsequently the landowner did not
attend or participate in the hearing. 1991-NMSC-089, ¶¶ 4,5, 112 N.M. 528, 817 P.2d 721.
However, three months later the lessee notified the landowner of two resulting orders and
retained subsequent royalty payments to offset the overpayments. Id. ¶ 5. The landowner
filed an application for a hearing to obtain relief from the two orders. Id. The landowner
attended and participated in that hearing and a third order was issued denying her
application for relief. Id. ¶ 5. In the subsequent appeal to this Court, we declared the first two
orders void reasoning that service by publication in that context violated due process
requirements of reasonable notice. Id. ¶ 13. As to the third order, this Court stated, “We do
find that Uhden eventually had notice and an opportunity to be heard on the issue of spacing
. . . . ” Id. The Court determined that eventual notice coupled with the ability to participate
in the proceedings met the requirements of due process. See Id. ¶¶ 10, 13.

{28} Even though Garduño did not receive notice of her employer’s appeal for 130 days,
we cannot conclude that the risk of erroneous deprivation of unemployment benefits is
unnecessarily high as a consequence of the procedures utilized by the Department. In this
case, the Department completely adhered to the protocols outlined in the Unemployment
Compensation statutes and accompanying regulations as described in Millar, including not
ceasing payments without prior notice and an opportunity to be heard. See Millar,
2013-NMCA-055, ¶¶ 7-9; see also 11.3.300.308(E) NMAC (1/1/2003) (“Once an initial
determination is made and payment of benefits is begun, payments shall not be stopped
without prior notice and an opportunity to be heard.”) The erroneous deprivation that
Garduño alleges would occur during the delay in the decision of a second-tier appeal which
could reverse the initial determination. But prior to and during the appeal, Garduño was
receiving her benefits and was deprived of nothing. Moreover, during the appeals process,
Garduño was afforded abundant process that included a hearing and opportunities to obtain
counsel, present evidence, and confront and cross-examine adverse witnesses.

2. Probable value of earlier notice or of additional or substitute procedural
 safeguards

{29} We next examine any possible value of the additional safeguards proffered by
Garduño. Garduño argues that she should have received an earlier notice and hearing.
Inherent in this question is whether the outcome would have been different if the Department
had provided the additional process Garduño requests. Cf. State ex rel. Children, Youth &
Families Dep’t v. Christopher B., 2014-NMCA-016, ¶ 7, 316 P.3d 918 (“[I]n order to show
a denial of due process, we do require the [claimant] to ‘demonstrate that there is a
reasonable likelihood that the outcome might have been different[]’ had the denied procedure
been afforded.” (Third alternation and emphasis in original) (internal quotation marks and
citation omitted)).

 9
{30} Garduño relies on Waters-Haskins v. Human Services Department, Income Support
Division to argue that DWS’s late notice of the pending appeal amounted to “a false
representation or concealment of material facts,” which implied “‘representations that are
contrary to the essential facts to be relied on, even when made innocently or by mistake’.”
2009-NMSC-031, ¶ 24, 146 N.M. 391, 210 P.3d 817 (citation omitted) (holding that because
the agency clearly knew of claimant’s ineligible status but continued to pay her food stamp
benefits for eight years while the claimant had no way of knowing she was ineligible, the
agency was estopped from later attempting to recoup the paid benefits). In that case, this
Court applied a theory of equitable estoppel, an issue which Garduño does not argue on
appeal. Further, the Waters-Haskins holding is not dispositive because Garduño was made
aware of the possibility of appeal and of the possibility of having to pay back benefits should
she lose on appeal. The notice to Garduño stated, “If your employer challenges a decision
allowing benefits to you and the appeal decision is against you, you will be required to repay
those benefits.” Garduño appears to be making an equitable estoppel argument couched in
procedural due process; however, because Garduño did not cross-appeal the Court of
Appeals’ adverse equitable estoppel determination, the issue is not before us.

{31} Here, the delayed notice of appeal Garduño received is more analogous to the
eventual notice received in Uhden. Despite the delay, Garduño still received notice of the
hearing and appeal prior to the hearing, and the delay did not prevent Garduño from
attending and participating in the DWS appeal hearing. See 11.3.500.10(A)(1) NMAC
(1/1/2003). At the appeal hearing, the ALJ heard testimony from Garduño, the store
manager, an employee, and the store’s loss prevention investigator; and the ALJ considered
evidence consisting of written statements, policies, receipts, and surveillance video. Like
Uhden, Garduño was not deprived of an opportunity to be heard on the issue of repayment
of unemployment benefits.

{32} The Minnesota Court of Appeals considered a due process argument similar to
Garduño’s and added another element requiring notice of the interest at stake. In Schulte v.
Transportation Unlimited, Inc., a discharged employee received notice of a hearing
requested by his employer to challenge the unemployment benefits he had already received.
354 N.W.2d 830, 831 (Minn. 1984). Because the employee was reemployed before the
hearing and was not informed of the potential requirement of repayment upon reversal of the
initial decision to award benefits, the employee did not attend the hearing. Id. at 831-32. The
Minnesota Court held that the notice was “affirmatively misleading” and resulted in a denial
of due process because it failed to communicate the interest at stake. Id. at 835; see also
Dilda v. Quern, 612 F.2d 1055, 1057 (7th Cir. 1980) (holding a due process violation for
lack of notice of the possible decrease in a food stamp allotment because notice did not
meaningfully inform persons so they could protect their interest)).

{33} Garduño’s case is more like cases from the Court of Appeals of Minnesota that
distinguish Schulte where the Court ultimately held that there was no constitutional violation
when the employee did participate in the hearing. See Comm’r of Nat. Res. v. Nicollet Cty.
Pub. Water/Wetlands Hearings Unit, 633 N.W.2d 25, 30 (Minn. Ct. App. 2001) (affirming

 10
an appellate denial of the appellant’s due process claim based on constitutionally valid notice
of the hearing because the appellant knew the potential consequences of a reversal of the
initial decision and participated in the appeal with counsel); see also Aubin v. Family Dollar,
Inc., No. A14-0483, 2014 WL 6724937, at *4-5 (Minn. Ct. App. Dec. 1, 2014) (holding that
online system of appeals did not violate due process rights because it “was not affirmatively
misleading” and it adequately explained the “potential consequences” of failing to file a
timely appeal (citations omitted)); Koch v. Sheldahl, No. A03-1562, 2004 WL 1878786, at
*4 (Minn. Ct. App. Aug. 19, 2004) (determining that employee was not entitled to notice of
consequences of losing an unemployment benefits appeal until she received notice that the
employer had, in fact, appealed and concluding that when faced with the decision of whether
to participate in the appeal, the employee also had notice of the consequences of losing an
appeal thus there was no due process violation). In Garduño’s case, like the Nicollet case,
the late notice did not prevent Garduño from participating in the appeal hearing. The facts
also indicate that Garduño, like Nicollet was given notice of the potential consequences of
losing an appeal. Garduño’s participation in the appeal hearing coupled with her notice of
the potential consequences was not “affirmatively misleading.”

{34} Even though Garduño was unaware of her employer’s appeal for a substantial time,
Garduño’s argument overlooks that the notice of claim determination dated March 12, 2010
stated that “[i]f your employer challenges a decision allowing benefits to you and the appeal
decision is against you, you will be required to repay those benefits.” Further, the August
3, 2010, notice of hearing the Department mailed to Garduño informed Garduño of the issues
to be addressed, including the issue of whether she left her employment without good cause
or was discharged for misconduct. The notice contained references to the legal and
regulatory bases related to those issues. The notice included information required by the
regulations meant to inform Garduño of the issues to be addressed so she could prepare for
the hearing. See 11.3.500.9(D) NMAC; 11.3.500.9(D)(1), (3) NMAC.

{35} We are not persuaded that there was probable value to Garduño’s proffered
additional procedural protection in receiving earlier notice. The requested additional
procedures would not have changed the outcome of the final eligibility determination.
Garduño was discharged from employment for her own misconduct, and no amount of time
would have permitted her to show otherwise. Indeed, before the district court, Garduño’s
counsel acknowledged that the Department’s eligibility decision was probably correct.
Additionally, Garduño cannot prove that earlier notice would have led to a smaller
overpayment debt where, even after she received actual notice of the appeal, she continued
to collect benefits voluntarily increasing the risk that she would have a higher overpayment
debt.

{36} There would be no added value in a speedier notice and hearing where it would not
have afforded additional protections from an erroneous deprivation of the continuation of
benefits or from a wrongful order to repay benefits. The Court of Appeals in this case failed
to view the process as a whole by focusing on the lack of a specific type of notice and not
considering the abundant process and safeguards afforded to Garduño. Accordingly, the late

 11
notice did not violate due process.

{37} We also note that the Department has the legal right to recoup overpaid benefits, even
those benefits mistakenly overpaid by the Department. See, e.g., Ellender v. Schweiker, 575
F. Supp. 590, 593, 600 (S.D.N.Y. 1983) (“We do not question the Government’s legal right
to collect back all legitimate overpayments of [Federal Supplemental Social Security
Income] benefits from recipients who are presently able to repay their debts after they obtain
their full [Social Security] checks.”); see generally Section 51-1-38 (describing a claimant’s
liability for unemployment benefit overpayment).

C. The Government’s interest includes the function involved and the fiscal and
 administrative burdens that the additional or substitute procedural
 requirement entails

{38} The third factor of the Mathews test is “the Government’s interest, including the
function involved and the fiscal and administrative burdens that the additional or substitute
procedural requirement would entail.” Mathews, 424 U.S. at 335. Mathews described this
factor as a consideration of “the public interest” which includes “the administrative burden
and other societal costs” associated with providing the proposed additional procedural
safeguards. Id. at 347. In discussing this test, Mathews looked both to the financial burden
on the administration and to the effect the costs of additional procedures for undeserving
recipients may have on deserving recipients. Id. at 347-48. The Department argues that the
government’s interest at issue here is in recouping benefits erroneously paid to claimants
who did not deserve them. We disagree. The added procedural safeguards Garduño requests
are more timely notice and hearing. Thus, we must determine the added burden on the
Department to provide a more timely notice and hearing. It appears to us that the added
burden of notifying claimants of an employer’s appeal sooner is minimal. Significantly, the
Department does not contest our conclusion. In fact, at oral argument before this Court, the
Department stated that claimants are currently provided with notice of appeal and an appeal
hearing much sooner than occurred in Garduño’s case.

{39} While the private interest in the continuation of benefits is important, there is a very
low risk of erroneous deprivation under the procedures utilized by the Department. The
interest in the continuation of benefits was attenuated where Garduño received benefits
through the first level of administrative appeal. Unemployment benefits hearings must
comport with due process and be conducted in such a manner as to ascertain the substantial
rights of parties; fundamental fairness is the essence of due process. More specifically, a
claimant is entitled to a full, fair, and impartial hearing which conforms to the fundamental
principles of due process and which includes the right to confront and cross-examine
witnesses. In this case, the Department provided and Garduño received adequate notice and
a fundamentally fair, full, and impartial hearing.

IV. CONCLUSION

 12
{40} Garduño was not deprived of a protected property interest where she continued to
receive benefits up until it was determined that she was ineligible for the benefits. The
Department’s late notice of a pending appeal did not deprive Garduño of due process of law
where the late notice neither prejudiced her ability to defend against the employer’s assertion
that she had been fired for misconduct nor prejudicially delayed her merits hearing.

{41} IT IS SO ORDERED.

 _____________________________________
 PETRA JIMENEZ MAES, Justice

WE CONCUR:

____________________________________
BARBARA J. VIGIL, Chief Justice

_____________________________________
EDWARD L. CHÁVEZ, Justice

_____________________________________
CHARLES W. DANIELS, Justice

_____________________________________
RICHARD C. BOSSON, Justice, Retired
Sitting by Designation

 13