**Certiorari Granted, March 14, 2014, No. 34,546**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-050**

**Filing Date: January 15, 2014**

**Docket No. 32,026**

**NEW MEXICO DEPARTMENT
OF WORKFORCE SOLUTIONS,**

  **Petitioner-Appellant,**

**and**

**ALBERTSONS,**

  **Employer,**

**v.**

**NANCY GARDUÑO,**

  **Respondent-Appellee,**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

New Mexico Department of Workforce Solutions
Marshall J. Ray, General Counsel
Elizabeth A. Garcia, Staff Attorney
Tami L. Keating, Staff Attorney
Albuquerque, NM
Attorneys for Appellants

New Mexico Legal Aid, Inc.
Timothy R. Hasson
Santa Fe, NM

Attorney for Appellee

**OPINION**

1

**ZAMORA, Judge.**

**{1}** The New Mexico Department of Workforce Solutions (DWS) appeals from a district court order reversing a decision of the DWS's Appeals Tribunal (the Tribunal). The Tribunal determined that claimant Nancy Garduño (Garduño) was required to repay an overpayment of unemployment compensation benefits in the amount of $11,256. The district court held: (1) the Tribunal's hearing, conducted six months after Garduño started receiving benefits, violated the timeliness requirements for processing appeal claims under state and federal law; (2) the doctrine of equitable estoppel barred DWS from claiming and collecting an overpayment from Garduño; and (3) the overpayment claims process violated Garduño's due process rights by failing to provide Garduño with timely notice and a hearing. With respect to the first two issues, they have been resolved by virtue of our decision in *Millar v. New Mexico Department of Workforce Solutions*, 2013-NMCA-055, 304 P.3d 427, *cert. denied*, 2013-NMCERT-004, 301 P.3d 858, and accordingly, we reverse that portion of the district court's order. We affirm the district court on the issue of procedural due process.

## I.    BACKGROUND

**{2}** Garduño was discharged from her employment with Albertsons (Employer) on February 5, 2010. She filed for unemployment compensation benefits on February 14, 2010. After preliminary fact finding, the DWS claims examiner issued a notice of claim determination (NCD) in favor of Garduño granting her benefits of $402 per week. The NCD stated that the benefit determination was final unless Employer appealed within fifteen calendar days from March 12, 2010. Fourteen days later, on March 26, 2010, Employer appealed. Garduño did not receive a copy of Employer's appeal, and DWS continued sending her benefits.

**{3}** DWS did not inform Garduño of Employer's appeal until the Tribunal sent out a notice of hearing on August 3, 2010, setting the hearing for August 19, 2010. The appeal before the Tribunal began August 19, 2010, and concluded on September 9, 2010. On September 14, 2010, the Tribunal determined that Garduño was disqualified from benefits because she was terminated for misconduct connected with her employment. Garduño contested Employer's claim of misconduct. Garduño subsequently received an overpayment notice for the unemployment payments that she had received from February 27, 2010, until her benefits were terminated in September 2010, totaling $11,256.

**{4}** Garduño appealed the overpayment determination through DWS's administrative process. The Tribunal affirmed the claims examiner's decision that Garduño had been overpaid benefits in the amount of $11,256 and that the benefits must be repaid to DWS. In turn, DWS's cabinet secretary (secretary) upheld the December 30, 2010, determination of the Tribunal. The secretary's affirmation was the final administrative decision in the matter. Having exhausted her administrative remedies, Garduño appealed to the district court under Rule 1-077 NMRA and Section 51-1-8(M), (N) of the Unemployment Compensation Law,

NMSA 1978, §§ 51-1-1 to -59 (1936, as amended through 2010). The district court granted Garduño a writ of certiorari and, after a hearing, reversed the decision of the secretary. Specifically, the district court found that DWS was out of compliance with federal and state timeliness standards for processing appeals, that DWS was equitably estopped from pursuing overpayments against Garduño, and that DWS had violated Garduño's procedural due process right to timely notice and a hearing. This appeal timely followed.

## II.  DISCUSSION

**{5}**  This Court is again called to address the question of whether DWS can recover unemployment compensation benefits from claimants after the claimants have first been deemed eligible, then subsequently been deemed ineligible for benefits. In *Millar*, we recently concluded that the timeliness requirements of 20 C.F.R. §§ 650.1 to 650.4 (2006, as amended through 2013) and Section 51-1-8(D), and the doctrine of equitable estoppel do not preclude DWS from recovering overpayments after the claimant has been disqualified for benefits. *Millar*, 2013-NMCA-055, ¶¶ 17, 23. However, we conclude in this case that DWS violated Garduño's procedural due process rights in a manner that precludes it from collecting the repayment. We begin with the standard of review and a brief discussion of *Millar*, which is directly on point as to the federal and state timeliness standards and estoppel. We then turn to the constitutional procedural due process issue raised by Garduño.

### A.  Standard of Review

**{6}**  This Court applies the same standard of review as the district court when reviewing "an administrative order to determine whether DWS acted fraudulently, arbitrarily, or capriciously, or whether, based on the whole record, the decision is not supported by substantial evidence." *Millar*, 2013-NMCA-055, ¶ 6. Under the whole record standard of review, we look at all evidence, whether it is favorable or unfavorable to the agency's determination. *Id.* "Questions of substantial compliance with a statute depend on statutory construction, and we review those questions de novo." *Id.*

**{7}**  The constitutionality of DWS's rulings presents this Court with a question of law, which we also review de novo. *See Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 19, 148 N.M. 21, 229 P.3d 494 (applying de novo standard of review to due process violations); *see also U S West Commc'ns, Inc. v. N. M. State Corp. Comm'n*, 1999-NMSC-016, ¶ 15, 127 N.M. 254, 980 P.2d 37 (holding that an agency's ruling with respect to whether a party "was afforded the process it [was] due under the Fourteenth Amendment to the United States Constitution [is] subject to de novo review").

### B.  *Millar v. New Mexico Department of Workforce Solutions*

**{8}**  Both parties agree that the first two issues of this appeal have been resolved by *Millar*. For purposes of review, we will briefly discuss the application of *Millar* to the case

at hand. The facts of *Millar* are strikingly similar to the case currently before this Court. The claimant was released from his employment on November 20, 2009, and filed for unemployment compensation benefits. *Millar*, 2013-NMCA-055, ¶ 2. DWS initially determined the claimant was eligible for benefits. *Id.* The claimant received an NCD, which stated that the benefit determination was final unless his employer appealed within fifteen calendar days and that if, on appeal, a decision was made against him, he would be required to repay all benefits he had received. *Id.* The claimant's employer did file a timely appeal, however, DWS did not inform the claimant of the appeal for nearly five months. *Id.* ¶¶ 2-3. Meanwhile he continued to receive benefits. *Id.* ¶ 3. At the appeal hearing, the claimant was "disqualified from benefits due to misconduct connected with his employment" and was required to repay DWS $4,931. *Id.* ¶¶ 3-4. The claimant appealed, exhausting his administrative remedies, and then appealed to the district court under Rule 1-077 and Section 51-1-8(M), (N). *Millar*, 2013-NMCA-055, ¶ 4. The district court found in the claimant's favor ruling that "DWS was out of compliance with federal and state timeliness standards for processing appeals" and that "DWS was equitably estopped from pursuing overpayments against [the claimant]." *Id.*

**{9}** DWS appealed to this Court. *Id.* We reversed the district court, holding that it had "misapplied the federal and state time-lapse standards" and that equitable estoppel could not be applied contrary to DWS's statutory obligation to recoup overpayments of benefits. *Id.* ¶¶ 17, 24.

## 1.       Federal Timeliness Regulations

**{10}** In *Millar*, this Court recognized that the "Codes of Federal Regulation are federal law and, if relevant, may properly be considered by the district court." *Id.* ¶ 12. We found nothing in the broad language of the regulation setting "absolute deadlines for processing an individual first level appeal." *Id.* ¶ 14. We concluded that "the plain language of 20 C.F.R. § 650.4(b) does not establish any mandatory statutory time limit that would require [the claimant] to be notified of the pending appeal or within which the hearing had to be held[,]" but instead offers only "guidelines in processing unemployment appeals." *Millar*, 2013-NMCA-055, ¶ 14.

**{11}** Additionally, this Court held that Section 51-1-38(F) "unequivocally imposes a statutory duty upon DWS to recover funds issued to claimants who are later found to be ineligible or disqualified from receiving benefits." *Millar*, 2013-NMCA-055, ¶ 15. The Standard for Appeals Promptness Rule, 20 C.F.R. § 650.4(b) does not allow "a claimant who is subsequently disqualified from receiving benefits to challenge DWS's mandatory obligation to recover overpayments." *Millar*, 2013-NMCA-055, ¶ 15. We were unable to reconcile the district court's interpretation of 20 C.F.R. § 650.4(b) with "DWS's statutory obligation to recover overpayments from an initial favorable eligibility ruling that is subsequently overturned on appeal." *Millar*, 2013-NMCA-055, ¶ 17. Therefore, we concluded that "the district court misapplied the federal and state time-lapse standards" and reversed. *Id.*

## 2. The Application of Equitable Estoppel

**{12}** In *Millar*, we noted that estoppel "can only be applied against the state in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it." *Id.* ¶ 19. More importantly, it "cannot be applied contrary to statutory requirements." *Id.* "With respect to New Mexico state agencies in particular, the doctrine only is available to bar those rights or actions over which an agency has discretionary authority." *Id.* (internal quotation marks and citation omitted). "Thus, equitable relief is not available when the grant thereof would violate the express provision of a statute." *Id.* (alteration, internal quotation marks, and citation omitted). Having recognized DWS's mandatory "statutory duty to recover benefits paid to claimants later found to be ineligible or disqualified" under Section 51-1-38(F), we held that DWS has no discretionary authority in pursuing collection of any overpayment. *Millar*, 2013- NMCA-055, ¶ 20. "The affirmative obligation imposed on DWS to recover full repayment of benefits from [the claimant] forecloses the application of equitable estoppel against it." *Id.* ¶ 24.

**{13}** Because *Millar* is directly on point as to the applicability of the federal timeliness standards and the doctrine of estoppel to DWS's overpayment collection procedures, we determine that it definitively resolves those issues as they are raised in this appeal. Accordingly, we conclude the district court exceeded its authority in holding that the Tribunal violated the timeliness requirements of 20 C.F.R. §§ 650.1 to 650.4 and Section 51-1-8(D). The district court also erred in ruling that the doctrine of equitable estoppel barred DWS from recovering the overpayments to Garduño. However, *Millar* does *not* consider or decide the constitutionality of DWS's overpayment claims process. 2013-NMCA-055, ¶ 16 (declaring this case does not involve a claim of constitutional deprivation). We now address whether the overpayment claims process violated Garduño's procedural due process rights.

## C. Procedural Due Process

**{14}** DWS claims that by providing notice of the appeal hearing and an opportunity to be heard, its overpayment claims process afforded Garduño procedural due process. We disagree.

**{15}** After an initial determination awarding unemployment benefits is made in favor of the claimant and payment of benefits has begun, due process requires the recipient be afforded notice and an opportunity to be heard prior to stopping payment of benefits. 11.3.300.308(E) NMAC (07-15-1998, amended 01-01-2003).

**{16}** Due process is implicated only when a person has a constitutionally protected interest in life, liberty, or property. *Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972). The types of interests that contribute to liberty and property for Fourteenth Amendment purposes are both broad and limited. *Id.* A property interest may arise from an expectation or interest created by state laws or policies. *Id.* Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as

state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* A property interest requires a legitimate claim of entitlement to some benefit. *Id.*

**{17}**    A "[s]tate statute[ ] providing for the payment of unemployment compensation benefits create[s] in the claimants for those benefits property interests protected by due process." *Wilkinson v. Abrams*, 627 F.2d 650, 664 (3d Cir. 1980); *see Royer v. State Dep't of Emp't Sec.*, 394 A.2d 828, 830 (N.H. 1978) (stating that claimants have "statutorily grounded claim[s] of entitlement to, or property interest in, unemployment compensation benefits" (internal quotation marks and citation omitted)); *accord Berg v. Shearer*, 755 F.2d 1343, 1345 (8th Cir. 1985); *Basciano v. Herkimer*, 605 F.2d 605, 609 (2d Cir. 1978); *Rivera v. Bd. of Review*, 606 A.2d 1087, 1090 (N.J. 1992). Our United States Supreme Court has recognized benefits such as welfare and unemployment compensation as matters of statutory entitlement. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). Garduño has a property right in receiving unemployment benefits by virtue of the Unemployment Compensation Law. *Ross v. Horn*, 598 F.2d 1312, 1317-18 (3d Cir. 1979) (noting that claimants "certainly have a property right in receiving unemployment benefits to which they are entitled by statute"); *see* §§ 51-1-1 to -59.

**{18}**    "In general, the right to due process in administrative proceedings contemplates only notice of the opposing party's claims and a reasonable opportunity to meet them." *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 32, 137 N.M. 161, 108 P.3d 1019 (emphasis, internal quotation marks, and citation omitted). Due process also requires that the notice "be more than a mere gesture; it should be reasonably calculated, depending upon the practicalities and peculiarities of the case[.]" *Albuquerque Bernalillo Cnty. Water Util. Auth.*, 2010-NMSC-013, ¶ 21 (internal quotation marks and citation omitted). This "apprise[s an] interested part[y] of the pending action and afford[s] them an opportunity to present their case." *U S West Commc'ns, Inc.*, 1999-NMSC-016, ¶ 29 (internal quotation marks and citation omitted). "[D]ue process . . . is not a technical conception with a fixed content unrelated to time, place[,] and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks and citation omitted). It is "flexible and calls for such procedural protections as the particular situation demands." *Id.* (internal quotation marks and citation omitted); *accord U S West Commc'ns, Inc.*, 1999-NMSC-016, ¶ 25. Procedural due process analysis requires consideration of three distinct factors:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional . . . procedural safeguards; and . . . (3) the Government's interest, including the . . . fiscal and administrative burdens that the additional . . . procedural requirement would entail.

*Mathews*, 424 U.S. at 321. In balancing these interests, we must consider the proceedings as a whole.

**{19}** "[T]he formality and procedural requisites for [a due process] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) (alterations in original) (internal quotation marks and citation omitted). "[T]he rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process." *Id.* Notice should be prompt "with the opportunity to be heard at a meaningful time and in a meaningful manner." *Sandia v. Rivera*, 2002-NMCA-057, ¶ 17, 132 N.M. 201, 46 P.3d 108 (internal quotation marks and citation omitted). In this context, prompt and adequate notice of appeal and administrative review "provides an opportunity for consideration and correction of errors made in initial eligibility determinations." *Fusari*, 419 U.S. at 389. The lengthy delay between an employer's appeal and the issuance of the notice of appeal hearing is an important factor in assessing the impact of official action on the private interests.

**{20}** The private interest here is Garduño's right to timely notice of Employer's appeal. Had Garduño been notified promptly of Employer's appeal, she could have taken steps to minimize the overpayment of unemployment benefits for which she was ultimately deemed ineligible. Instead, Garduño continued to receive benefits of $402 weekly. One day after Employer's appeal, Garduño had received $2,010 in unemployment benefits. By the time DWS mailed the notice of appeal, Garduño had accrued benefits of $9,246. On the date of the first hearing, Garduño's potential overpayment debt was $10,050, and upon her ineligibility determination, it was $11,256.

**{21}** The risk of erroneously depriving claimants of a prompt notice and a hearing at a meaningful time is significantly high when DWS fails to send notice of the employer's appeal for several months. In this case, by failing to timely inform Garduño that Employer had appealed, DWS essentially saddled her with a substantial potential debt without meaningful notice. Moreover, the Tribunal sent out the notice of hearing on August 3, 2010, for the August 19, 2010, hearing. By the time Garduño received the notice, she had about two weeks to prepare for the hearing based on this new information, whereas the Tribunal and Employer had the opportunity to prepare for the hearing at least since March 26, 2010. DWS's overpayment claim procedures fall short of the constitutional standard of prompt notice and an expeditious hearing conducted at a meaningful time. "[T]he citizen facing a loss at the hands of the [s]tate must be given a real chance to present [their] side of the case before a government decision becomes final." *Rivera*, 606 A.2d at 1090.

**{22}** We recognize DWS's interest in avoiding onerous fiscal and administrative burdens, and the additional procedural requirements associated therewith. We also recognize that DWS processes a high volume of applications for unemployment compensation benefits and appeals. However, providing prompt notice of an employer's appeal, in compliance with due process, does not require additionally burdensome procedures. Neither does requiring the Employer to properly serve a copy of its notice of appeal upon the claimant. Even if DWS is unable to hold appeal hearings immediately following an employer's appeal, it could nevertheless notify claimants of employer appeals when the appeals are filed, rather than sending notice two weeks prior to a hearing that may not be held for several months, or in

this case, nearly four months.

**{23}** In *Millar*, we cautioned that "prompt payment [was] not the only consideration of procedural fairness to a claimant, prompt notice of benefits being in jeopardy must be as well." 2013-NMCA-055, ¶ 17. We also expressed our concern that the claimant had not been provided notice of employer's appeal and DWS continued to pay claimant's benefits for several months after the appeal had been filed. *Id.* ¶ 15. "There is nothing humane about a delay of some months in not informing an unemployed person that his employer is contesting the award of benefits and that he may lose them." *Id.* This is compounded by the fact that neither the statute nor the department regulations expressly require that any party, other than DWS, be notified of another party's appeal. *Compare* § 51-1-8(B) (providing for appeal of initial determination by claimant or interested party, within fifteen calendar days after the date of notification of mailing of the determination), *with* 11.3.500.8(A) NMAC (01-01-2003) (allowing any interested party aggrieved by a determination to file an appeal and providing for the method, mode, and substance of an appeal to the department). We acknowledge that the NCD stated the benefit determination was final subject to Employer appealing the determination within fifteen calendar days. In light of the disagreement between Garduño and Employer as to the facts surrounding her separation of employment from Employer, and Garduño not receiving notice that Employer filed an appeal on or before March 27, 2010, there was no reason for her to believe she would be required to repay any of her benefits until her receipt of the August notice of hearing, five months later. The requirement of meeting the constitutional standard of prompt notice and a hearing at a meaningful time presents a negligible burden for DWS. Such a notice requirement is imperative for the protection of all parties to an action for unemployment compensation benefits.

**{24}** It is completely within the power of DWS to minimize the increasing payment of benefits that may have to be repaid by an unemployed claimant who is without financial resources. The dissent concedes that even a busy agency like DWS can readily provide prompt notice though the statute does not require such. These claimants must be afforded some degree of protection from DWS's otherwise avertible failure to timely notify them of an employer's appeal.

**{25}** To the extent that DWS argues that its statutory obligation under Section 51-1-38(F) to recoup overpayments may not be challenged, we disagree. While it is the "domain of the [state] legislature, as the voice of the people, to make public policy," under Article VI of the United States Constitution, the federal Constitution is the "supreme Law of the Land." *Cockrell v. Bd. of Regents of N.M. State Univ.*, 2002-NMSC-009, ¶¶ 13-14, 132 N.M. 156, 45 P.3d 876 (internal quotation marks and citation omitted). As such, constitutional due process rights may not be overrun by the mandates of state statutes. We conclude that federal supremacy precludes DWS from collecting overpaid unemployment benefits from Garduño under Section 51-1-38(F), where its overpayment claims process violated her due process right to timely notice and a meaningful opportunity to be heard.

## III.    CONCLUSION

**{26}**    For the reasons set forth above we reverse the district court's order finding that DWS was out of compliance with the federal and state timeliness standards for processing appeals and that DWS was equitably estopped from pursuing overpayments against Garduño. We affirm the district court's determination that DWS violated Garduño's procedural due process rights to timely notice of her employer's appeal.

**{27}    IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**I CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

**J. MILES HANISEE, Judge (concurring in part and dissenting in part)**.

**HANISEE, Judge (concurring in part and dissenting in part).**

**{28}**    I concur in the Majority Opinion's application of our recent opinion in *Millar* to reverse the district court and hold that the appeal hearing conducted by the DWS Tribunal was timely under state and federal law and that DWS was not equitably estopped from recouping unemployment compensation benefits overpaid to Garduño.[1] I do not agree, however, that the same legally compliant hearing simultaneously offends the constitutional safeguard of procedural due process. As well, it is unlikely that New Mexico law creates a "property interest"—the threshold requirement of due process claims—in erroneously paid benefits to which a claimant was legally determined to be unentitled and no longer asserts were paid to her as a matter of substantive right. I respectfully dissent from Part C of today's ruling holding that Garduño's due process rights were violated and prohibiting DWS from complying with its statutory obligation to recoup the overpaid funds.

**{29}**    In dissenting, I take no issue with the Majority Opinion's reiteration of the general concern we expressed in *Millar* that the appeal process employed by DWS is poorly administered and occasions unnecessary human hardship. *See* Majority Opinion ¶ 23; *see also Millar*, 2013-NMCA-055 ¶ 17 (recognizing the importance of "procedural fairness to

_____

[1]It is also my view that due to the nearly identical facts and overlapping legal issues shared by the instant case and *Millar*, DWS's request for consolidation of the two cases should have been granted. *See* Order of August 6, 2012 (holding in abeyance DWS's request for consolidated consideration).

9

a claimant" including "prompt notice of benefits being in jeopardy"). The facts of this case and *Millar* demonstrate that, although DWS cautions new benefit recipients by NCD that an employer's successful appeal would require repayment of overpaid benefits, it belatedly notifies those same recipients when their initially favorable determinations of eligibility in fact have been appealed. Despite the absence of "any mandatory statutory time limit that would require [the claimant] to be notified of the pending appeal," Majority Opinion ¶ 10 (quoting *Millar*, 2013-NMCA-055 ¶ 14), prompt notification of the procedural event that both jeopardizes ongoing receipt of benefits and seeks a retroactive determination of ineligibility seems readily achievable by even so busy an agency as DWS. This is particularly so given that, like most funds that administer unemployment benefits, New Mexico law couples a final determination that benefits were overpaid with mandatory recoupment. *See* Section 51-1-38(H) (requiring that claimants whose benefit eligibility is "modified or reversed by a final decision . . . *shall* . . . be liable to repay" unduly received benefits (emphasis added)).

**{30}** Despite what we consider to be the imperfect nature of the DWS Tribunal's appeal process, the question of constitutionality turns on whether Garduño was deprived of a legitimate property interest without being afforded an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (establishing the factors applicable to procedural due process analysis (internal quotation marks and citation omitted)). Considering the *Mathews* factors, the Majority Opinion concludes that the private interest with which DWS impermissibly interfered is Garduño's "right to timely notice of Employer's appeal," the absence of which it concludes caused a "significantly high" risk of erroneous deprivation due to her disproportionately brief opportunity to prepare for the appeal hearing. Majority Opinion ¶¶ 20-22. The majority further holds that these failures were not overcome by DWS's interest in "avoiding onerous fiscal and administrative burdens[.]" Majority Opinion ¶ 22. For many reasons, this analysis is mistaken.

**{31}** First, I question the majority's determination that Garduño has pleaded the threshold requirement needed to trigger procedural due process review. It is particularly entrenched within constitutional jurisprudence that a claim such as Garduño's gains cognizability only upon a showing that she was deprived of "a legitimate liberty or property interest" rightfully possessed by her. *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 40, 149 N.M. 556, 252 P.3d 780 (internal quotation marks and citation omitted), *cert. quashed*, 2013-NMCERT-003, 300 P.3d 1182. That showing has been widely accepted as the switch that initiates the safeguards of due process. *See Roth*, 408 U.S. at 577; *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) ("We established nearly twenty-five years ago that to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest."); *Lucas v. Monroe Cnty.*, 203 F.3d 964, 978 (6th Cir. 2000) ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits." (internal quotation marks and citations omitted)). While the majority is correct that statutorily derived unemployment benefits have been held by many courts to constitute a property interest, *see Berg*, 755 F.2d at 1345; some

10

even at the initiatory stage of a claimant's application, *see Wilkinson*, 627 F.2d at 664-65 n.18, in appealing to the district court Garduño elected to abandon any challenge to the Tribunal's determination that she was substantively ineligible for unemployment benefits. Absent a pleaded or preserved assertion of property right, Garduño's desire to keep—and not repay to DWS—the overpaid benefits does not give rise to a "legitimate claim of entitlement." *Roth*, 408 U.S. at 577. Rather, her interest is of the type disallowed by *Roth*: that for which a claimant has an "abstract need or desire" or a "unilateral expectation." *Id.*; *see Cassidy v. Adams*, 872 F.2d 729, 732 (6th Cir. 1989) (finding no vested right to prevent recoupment of overpaid unemployment benefits under then-existing Kentucky state law or the Social Security Act). Nowhere does New Mexico law bestow ownership of benefits that are improperly awarded. Absent such a cognizable property interest, Garduño's claim fails under *Millar*.[2]

**{32}** Even assuming the existence of a property interest under New Mexico law that persists despite abandonment in district court, the majority's *Mathews* analysis is flawed. At the outset, the interests to be considered under the *Mathews* factors are incorrectly identified. Garduño's interest is not to "timely notice of Employer's appeal," Majority Opinion ¶ 20, but rather her private interest in unemployment compensation and the fair process of determining her eligibility to it. Similarly, DWS's interest is not in "avoiding onerous fiscal and administrative burdens," Majority Opinion ¶ 22, but in efficiently processing the volume of unemployment claims in New Mexico and preserving funds, and when necessary, recouping overpaid funds so that they may be used to properly compensate eligible claimants. As well, this interest serves the ancillary purpose of protecting employers from being wrongly compelled to pay benefits to ineligible claimants. Lastly, the majority evaluates the risk of erroneous deprivation speculatively and without proper consideration of "the probable value, if any, of . . . procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

**{33}** It is exactly those procedural safeguards, considered within our neutral evaluation of the time and manner in which the appeal hearing was conducted, that compel substantive rejection of Garduño's due process challenge under *Mathews*. Without discussing the hearing itself, the majority speculates on what could have been done by Garduño to minimize her potential debt or to prepare for the hearing for a longer period of time. Majority Opinion ¶¶ 20-21. This discussion has no factual basis in the record and, more importantly, circumvents the real *Mathews* standard that considers the circumstances as a whole in light of the process due. *See Sandia*, 2002-NMCA-057, ¶ 10 ("Procedural due process is a flexible right and the amount of process due depends on the particular circumstances of each case."

---

[2]In *Millar*, a case in which our Supreme Court elected not to grant certiorari, we recognized that the claimant sought a waiver of money owed for benefits to which a claimant was disqualified and to which he had "no vested right." 2013-NMCA-055, ¶ 16. It is precisely the absence of such a "vested right" that forecloses the propriety of due process review herein. Because we concluded that no such right existed in *Millar*, we must do the same here.

(internal quotation marks and citation omitted)). Here, the proceeding took place on two days, August 19, 2010 and September 9, 2010. Both Garduño and her Albertson's employer testified before an Administrative Law Judge. The burden of proof was on Employer to establish Garduño's misconduct. Documents, including a video, were provided both to and by Garduño, and were considered by the judge during the proceeding. Notably, the judge continued the proceeding for a period of three weeks so that Garduño could: (1) submit additional documents she believed to be important to the proceeding; (2) effectively subpoena a witness Garduño wished to question that was not available on August 19; and (3) be provided the actual video in an accessible format that was testified to but unavailable on the first day of the proceeding.

**{34}** Although earlier notice of Employer's appeal would have been preferable, I cannot agree that the notice of the hearing itself and the manner in which it was conducted by the Tribunal failed to comport with due process. To the contrary, the proceeding was conducted "in a reasonable time and manner." Since that is the constitutional inquiry, and under the *Mathews* factors the procedural safeguards of the Tribunal hearing overcame the delayed provision of notice of Employer's taking of the appeal, I do not agree that Garduño's due process rights were violated, even assuming she has a legitimate property interest. *See Berg,* 755 F.2d at 1347 (holding that under the *Mathews* test, the claimant showed "no significant injury caused by inadequate pre-termination notice" of hearing regarding unemployment benefits).

**{35}** For all these reasons, I respectfully dissent from Part C of the Majority Opinion.

_____
**J. MILES HANISEE, Judge**

**Topic Index for** *N.M. Dep't of Workforce Solutions v. Garduno*, **No. 32,026**

**APPEAL AND ERROR**
Standard of Review

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Due Process
Hearings
Notice
Standard of Review
Timeliness

**CIVIL PROCEDURE**
Estoppel

**CONSTITUTIONAL LAW**

Due Process

**EMPLOYMENT LAW**
Unemployment Compensation

**REMEDIES**
Equity