# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date: November 19, 2015**

**NO. S-1-SC-34,546**

**NEW MEXICO DEPARTMENT OF WORKFORCE SOLUTIONS,**

Petitioner-Appellant**,**

and

**ALBERTSONS,**

Employer,

v.

**NANCY GARDUÑO,**

Respondent-Appellee.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Raymond Z. Ortiz, District Judge**

New Mexico Department of Workforce Solutions
Marshall J. Ray
Elizabeth A. Garcia
Richard Lawrence Branch
Albuquerque, NM

for Petitioner-Appellant

Rodey Dickason Sloan Akin & Robb P.A.
Jeffrey L. Lowry
Albuquerque, NM

for Employer


New Mexico Legal Aid, Inc.
Alicia Clark
Albuquerque, NM
Timothy R. Hasson
Taos, NM

for Respondent

**OPINION**

**MAES, Justice.**

{1}   Following a determination that Respondent Nancy Garduño (Garduño) was ineligible for unemployment benefits because her employer terminated her for misconduct connected with her employment, the Cabinet Secretary of the New Mexico Department of Workforce Solutions (the Department) ordered Garduño to repay $11,256 in overpaid unemployment benefits. The Court of Appeals majority held that due process precluded the Department from collecting the overpaid unemployment benefits from Garduño where she received benefits payments during the ongoing appeals process because she was unaware of her employer's appeal for 130 days. *See N.M. Dep't of Workforce Solutions v. Garduño*, 2014-NMCA-050, ¶25, 324 P.3d 377 (Hanisee, J., concurring in part and dissenting in part), *cert. granted* 2014-NMCERT-003. We reverse the Court of Appeals and hold that Garduño's procedural due process rights were not violated because the Department provided Garduño with constitutionally adequate procedural protections prior to terminating her benefits and ordering her to reimburse the Department for the overpaid benefits.

**I.    FACTS AND PROCEDURAL HISTORY**

{2}   On February 5, 2010, Albertsons, a grocery store chain, terminated Garduño from her job as a front-end clerk for violation of the associate-purchase policy, which

prohibited giving away "free merchandise of any kind." This included giving deep discounts, a practice called "sweethearting." Surveillance cameras recorded Garduño charging a coworker and his wife $2.82 for merchandise that should have totaled approximately $17.00. An investigation conducted by Albertsons' management revealed that an incident that occurred on January 14, 2010, was not an isolated one and that Garduño gave at least one other employee an unauthorized discount.

{3}     Garduño filed for unemployment insurance benefits on February 14, 2010. The Department's claims examiner issued a notice of claim determination awarding Garduño $402 in weekly benefits. The notice stated that the determination was final "unless an appeal is filed within fifteen calendar days from: 03/12/2010." Additionally, the notice stated, "If your employer challenges a decision allowing benefits to you and the appeal decision is against you, you will be required to repay those benefits." *See* 11.3.300.308 NMAC (1/1/03) On March 26, 2010, Albertsons appealed the claim determination. The Department continued to pay Garduño benefits during the ongoing appeals process.

{4}     The Department did not notify Garduño of the Albertsons appeal until August 3, 2010, when the Department mailed Garduño a notice of hearing. The notice of hearing stated that "the appeal hearing" in front of the Department's appeals tribunal

2

was scheduled for August 19, 2010, and listed the legal issues to be addressed. After receiving the notice of hearing, Garduño continued filing weekly claims for benefits, collecting an additional $2,010 in unemployment benefits. At the appeal hearing on August 19, 2010, an administrative law judge (ALJ) began hearing testimony but ultimately elected to continue the hearing to give Garduño the chance to resubmit documents and request subpoenas. On August 23, 2010, the Department issued a notice stating that the hearing would resume on September 9, 2010. On that day, the ALJ heard testimony from Garduño, the store manager, an employee, and the store's loss prevention investigator, and considered evidence consisting of written statements, policies, receipts, and surveillance video. On September 14, 2010, the ALJ issued a decision disqualifying Garduño from benefits eligibility due to her employee misconduct. That same day, the Department issued an overpayment notice informing Garduño of her disqualification from benefits because she had "claimed and received benefits to which [she was] not entitled," and she was therefore required to refund the overpayment, totaling $11,256.

{5}    Garduño appealed the ALJ's decision. The board of review, which provides a second-tier administrative review of Department decisions, affirmed Garduño's disqualification on November 23, 2010. Garduño did not seek review of the board's

3

decision. However, she did appeal to the appeals tribunal the Department's decision to recoup the $11,256 overpayment. The tribunal held a hearing on December 29, 2010, on the issue of the overpayment and issued a decision the next day affirming the Department's decision to recoup the overpayments. On January 13, 2011, Garduño appealed the tribunal's decision to the Department's cabinet secretary. Citing NMSA 1978, Section 51-1-38 (1993), the cabinet secretary affirmed the decision of the tribunal on January 28, 2011, and ordered Garduño to repay the Department for the overpaid benefits.

{6} Having exhausted her administrative remedies, Garduño appealed the cabinet secretary's decision to state district court. Garduño asserted that the Department should be equitably estopped from pursuing collection of overpayments because the Department failed to comply with federal timeliness standards for processing appeals. Garduño also argued that the Department violated her right to notice and hearing under the Due Process Clause of the Fourteenth Amendment. In an order reversing the cabinet secretary's decision, the district court held that (1) the appeals tribunal's hearing, conducted six months after Garduño started receiving benefits, violated the timeliness requirements for processing appeal claims under state and federal law; (2) the doctrine of equitable estoppel barred the Department from claiming and collecting

an overpayment from Garduño; and (3) the overpayment claims process violated Garduño's due process rights by failing to provide Garduño with timely notice and hearing. The Department appealed the district court's order to the Court of Appeals.

{7}    At the time of the Department's appeal, the Court of Appeals had another pending case with similar facts. *See Millar v. N.M. Dep't of Workforce Solutions*, 2013-NMCA-055, 304 P.3d 427. Despite the Department's motion to consolidate this case with *Millar*, the Court of Appeals decided them separately. *See Garduño*, 2014-NMCA-050, ¶ 28 n.1 (Hanisee, J., concurring in part and dissenting in part). In *Millar*, the Court of Appeals rejected the claimant's equitable estoppel and federal timeliness regulation arguments, holding that the claimant did not have "a right to unemployment compensation benefits to which he was not entitled and which [the Department] has a statutory obligation to recover." 2013-NMCA-055, ¶¶ 16, 23. Procedural due process was not at issue in *Millar*. *See id.* ¶ 1.

{8}    After the *Millar* opinion was filed, a majority of a different Court of Appeals panel held that Garduño's federal and state timeliness and equitable estoppel arguments lacked merit for the same reasons set forth in *Millar*. *See Garduño*, 2014-NMCA-050, ¶ 13. The majority concluded, however, that the Department's failure to provide Garduño with timely notice of the employer's appeal from the notice of claim

5

determination awarding Garduño benefits violated her right to procedural due process so as to preclude the Department from collecting the overpaid benefits. *Id.* ¶¶ 21, 26. Judge Hanisee did "not agree that Garduño's due process rights were violated, even assuming she ha[d] a legitimate property interest," because the "proceeding was conducted 'in a reasonable time and manner.'" *Id.* ¶ 34 (Hanisee, J., concurring in part and dissenting in part). The Department appealed to this Court. We granted certiorari to consider whether the Court of Appeals erred by (1) holding that Garduño had a constitutionally protected property interest in unemployment benefits she received before being found ineligible for such benefits, (2) holding that Garduño's procedural due process rights were violated, and (3) providing Garduño with a remedy contrary to law and the public interest in preserving the unemployment fund.

**II.    STANDARD OF REVIEW**

{9}    Generally, we review "an administrative order to determine if it is arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or, otherwise not in accordance with law." *N.M. Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2013-NMSC-042, ¶ 9, 309 P.3d 89 (internal quotation marks and citations omitted). Because Garduño did not appeal the Department's eligibility determination, the only issue on appeal is the constitutionality of the Department's

procedures leading to the administrative order. The constitutionality of the Department's procedures presents this Court with a question of law, which we review de novo. *See Albuquerque Bernalillo Cty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 19, 148 N.M. 21, 229 P.3d 494 (citations omitted).

**III.    DISCUSSION**

{10}    The Due Process Clauses of the United States and New Mexico Constitutions require the government to afford certain procedural protections prior to depriving any person of a constitutionally protected interest in life, liberty, or property. *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."); N.M. Const. art. II, § 18 ("No person shall be deprived of life, liberty or property without due process of law."). Accordingly, "[a]dministrative hearings that affect a property or liberty interest must comply with due process." *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 31, 137 N.M. 161, 108 P.3d 1019.

{11}    In New Mexico state courts, "[t]he *Mathews* test is the appropriate analytical framework for a due process issue." *Archuleta* , 2005-NMSC-006, ¶ 31 (citation omitted). The *Mathews* test evaluates the following factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of erroneous deprivation of

7

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) " the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**A. New Mexico's Unemployment Compensation Law creates a constitutionally protected property interest in unemployment benefits**

{12} The first factor of the *Mathews* test requires considering the private property interest affected by state action. *See Mathews*, 424 U.S. at 335, 340-43. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of . . . the private interest that has been affected by governmental action." *Cafeteria & Rest. Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The Department argues that Garduño does not have a property interest in overpaid benefits because she failed to appeal the question of her eligibility. The Department agrees that an individual can have a constitutionally protected property interest in unemployment benefits that are improperly denied, but here, Garduño was deemed ineligible for the benefits and has never challenged that determination.

8

Garduño contends that the interest of an individual in continued receipt of governmentally created benefits is a constitutionally protected "property" interest. Garduño argues that, once the Department issued a notice finding her eligible for unemployment benefits, she had a protected property right in the those benefits. We hold that Garduño acquired a constitutionally protected property interest in unemployment benefits when she began receiving payments and that Garduño's retention of those benefits cannot be terminated without due process.

{13}     Property interest in a benefit was defined by the United States Supreme Court in *Board of Regents of State Colleges v. Roth*:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

{14}     A statutory scheme providing for the receipt of government benefits may give

9

rise to property interests protected by the due process clause. In *Mathews*, the United States Supreme Court determined that the private interest affected by state action was the claimant's continued receipt of benefits, which was a source of income, pending a final decision on his claim for Social Security disability benefits. *See* 424 U.S. at 339-40. Similarly, a private interest affected by state action is a claimant's continued receipt of welfare benefits. *See Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct 1011, 25 L.Ed.2d 287 (holding that "the pre-termination hearing has one function only; to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." (citations omitted)); *Roth*, 408 U.S. at 576 ("a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process." (citations omitted)); *see also Wilkinson v. Abrams*, 627 F.2d 650, 664 (3d Cir. 1980) ("State statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process." (citation omitted)).

{15}     New Mexico's Unemployment Compensation Law articulates the great importance of this source of income to unemployed claimants. *See* NMSA 1978,

10

Section 51-1-3 (1936) ("[The purpose of the statute is to] lighten [the] burden which now so often falls with crushing force upon the unemployed worker and [the worker's] family."). Lacking independent resources, a claimant's "need to concentrate upon finding the means for daily subsistence . . . adversely affects his ability to seek redress from the [state's] bureaucracy." *Goldberg*, 397 U.S. at 264. Unemployment benefits are significant to the recently unemployed worker because they "give prompt if only partial replacement of wages to the unemployed, to enable workers to tide themselves over, until they get back to their old work or find other employment, without having to resort to relief." *Cal. Dep't of Human Res. Dev. v. Java*, 402 U.S. 121, 131, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1970) (internal quotation marks, citation, and footnote omitted) (discussing the legislative purpose behind the Federal unemployment insurance scheme). Further, "[u]nemployment benefits provide cash to a newly unemployed worker at a time when otherwise he would have nothing to spend, serving to maintain the recipient at subsistence levels . . . ." *Id.* at 131-32 (internal quotation marks, citation and footnote omitted). The security provided by unemployment benefits during a period of unemployment is also important in "assisting a worker to find substantially equivalent employment . . . [because] [t]hey should not be doing anything else but looking for a job." *Id.* at 132 (internal quotation

11

marks omitted).

{16}     Because New Mexico's unemployment compensation scheme provides for the payment of unemployment compensation benefits, *see generally* NMSA 1978, §§ 51-1-1 to -59 (1936, as amended through 2013); 11.3.300 NMAC (07/15/1998, as amended through 07/31/2013) (specifying the administration of unemployment benefits claims), claimants for such benefits possess a property interest protected by due process. *See Wilkinson*, 627 F.2d at 664 ("State statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process." (citation omitted)); *Roth*, 408 U.S. at 576 ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.").

{17}     The Court of Appeals majority concluded that "Garduño has a property right in receiving unemployment benefits by virtue of the Unemployment Compensation Law." *Garduño*, 2014-NMCA-050, ¶ 17 (citations omitted). Judge Hanisee disagreed that Garduño had a legitimate property interest because she "abandon[ed] any challenge to the Tribunal's determination that she was substantively ineligible for unemployment benefits." *Id.* ¶ 31 (Hanisee, J., dissenting in part). Judge Hanisee

wrote that, "Garduño's desire to keep—and not repay to [the Department]—the overpaid benefits does not give rise to a 'legitimate claim of entitlement.' Rather, her interest is of the type disallowed by *Roth*: that for which a claimant has an 'abstract need or desire' or a 'unilateral expectation.'" *Id.* (citations omitted).

{18} The characterization of Garduño's claim makes little difference when determining the existence of a protected property interest. Whether Garduño is seeking to keep her benefits—benefits she was initially found eligible for—or whether she is seeking continued receipt of those benefits is irrelevant. Garduño's constitutionally protected property interest in the benefits arose when the claims examiner made the initial eligibility determination and she began receiving benefit payments. Once this property interest arose, procedural due process protections began protecting the security of that interest, and the Department could neither discontinue payments nor recoup earlier payments based on a disqualification and termination of benefits without affording Garduño due process. Indeed, the United States Supreme Court has held that "[r]elevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation." *Goldberg*, 397 U.S. at 262 (citations omitted); *see also Wilkinson*, 627 F.2d at 664–65 n.18 ("Our conclusion that claimants for state unemployment

13

compensation benefits have a protected property interest applies no less to claimants, like the Wilkinson class, seeking to establish eligibility in the first instance, than to claimants . . . seeking to establish continued eligibility." (citation omitted)).

{19}     We affirm the Court of Appeals' holding that "Garduño has a property right in receiving unemployment benefits by virtue of the Unemployment Compensation Law." *Garduño*, 2014-NMCA-050, ¶ 17 (citations omitted). Judge Hanisee is correct that Garduño did not challenge the substantive determination that she was ineligible for benefits. But that alone does not give the Department authority to terminate and recoup her unemployment benefits without affording Garduño due process. The next step in our procedural due process analysis is to determine whether the Department employed constitutionally adequate procedures in depriving the claimant of that interest. *See Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 38, 289 P.3d 1232.

**B.     There was no due process violation where there was neither erroneous procedural deprivation of the private interest nor probable value in the additional or substitute procedural safeguards**

{20}     The second *Mathews* test requires examining both the risk that the private interest will be erroneously deprived with the procedures used and any probable value of additional or substitute procedural safeguards. *See Mathews*, 424 U.S. at 335.

14

**1.     Erroneous procedural deprivation**

{21}     In examining the potential risk of erroneous deprivation, we look to the procedures as a whole. *See In re Comm'n Investigation Into 1997 Earnings of U.S. West Commc'ns, Inc.*, 1999-NMSC-016, ¶ 26, 127 N.M. 254, 980 P.2d 37 (citations omitted). To prevent erroneous deprivation in the administrative context, due process requires "'reasonable notice and opportunity to be heard and present any claim or defense'." *Rayellen Res., Inc. v. N.M. Cultural Props. Review Comm.*, 2014-NMSC-006, ¶ 20, 319 P.3d 639 (citation omitted); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 31-14, 70 S.Ct. 652, 94 L.Ed 865 (1950) (requiring that an adjudication for deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case"). However, "constitutional due process does not require an agency to afford a petitioner all elements of a traditional judicial proceeding." *Archuleta* , 2005-NMSC-006, ¶ 32 (citing *Miller v. County of Santa Cruz*, 796 F. Supp. 1316, 1319 (N.D. Cal. 1992), aff'd, 39 F.3d 1030 (9th Cir. 1994)).

{22}     Because Garduño did not challenge the substantive determination that she was ineligible for benefits, this is not the usual procedural due process case involving a prehearing deprivation of benefits. Garduño does not argue that she was deprived of

her benefits by a lack of process provided in the hearing. The essence of her deprivation is that she continued to receive the benefits during the ongoing appeals process unaware of her employer's appeal for 130 days and that she was actually incurring a debt. According to Garduño, "[d]ue process requires *prompt* notice with the opportunity to be heard *at a meaningful time* and in a meaningful manner." She points to an alleged deficiency in notice and hearing and argues that she should have received an earlier notice and hearing.

{23} We are therefore called to assess the significance of prompt notice and disposition of first-level appeals on a claimant's interest in unemployment benefits when the initial determination found the claimant eligible and the claimant received benefit payments through the first level of administrative appeal. The New Mexico Unemployment Compensation statute provides that upon appeal by any party of a initial determination of eligibility, the Department must provide a "reasonable opportunity for a fair hearing." NMSA 1978, Section 51-1-8(D) (2013, amended in 2015). The Department's regulations further provide that "[o]nce an initial determination is made and payment of benefits is begun, payments shall not be stopped without prior notice and an opportunity to be heard . . . ." 11.3.300.308(E) NMAC (1/1/2003).

16

{24} Notice is important to due process because the "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane*, 339 U.S. at 314. "Due process does not require the same form of notice in all contexts; instead, the notice should be appropriate to the nature of the case." *Rayellen*, 2014-NMSC-006, ¶ 19 (internal quotation marks and citations omitted). Put simply, we must determine whether the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (citations omitted).

{25} The goal of the Unemployment Compensation Law, and the importance behind unemployment benefits, centers around promptly providing support for the innocent workers who have become unemployed through no fault of their own. *See* Section 51-1-3. The Court of Appeals in *Millar* observed that this system "necessarily results in some payments being made upon an initial determination of eligibility that are subsequently overturned. As a result, the [Department] advises the claimant that if the appeal decision is against him, he will be required to repay the benefits received." 2013-NMCA-055, ¶ 8.

{26} We agree with the Court of Appeals in *Millar* that "prompt payment is not the

only consideration of procedural fairness to a claimant[;] prompt notice of benefits being in jeopardy must be [considered] as well." 2013-NMCA-055, ¶ 17. However, the importance in avoiding administrative delay is of less significance where the initial determination is one of eligibility and the claimant is receiving payments during the appeal process. Here, the claims examiner's initial determination concluded that Garduño was eligible, and she continued to receive benefits until the ALJ's determination following the hearing at the first level of appeal. We do not hold that *any* claim of late notice of an appeal or *any* late timing of the hearing cannot result in a due process violation. Instead, our holding requires weighing a claimant's deprivation of an important private interest, such as unemployment benefits, relative to procedures used in such a deprivation. *See Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994) (requiring that if there is a deprivation, "we must determine whether the procedures relative to that deprivation were constitutionally sufficient." (citation and footnote omitted)).

{27}     In New Mexico, the distinguishing factor used to determine whether there was or was not a violation of due process rights depends on whether the defective notice deprived the claimant of the ability to participate in the proceeding. *See Franco v. Carlsbad Mun. Schs.*, 2001-NMCA-042, ¶¶ 6, 14, 130 N.M. 543, 28 P.3d 531

18

(holding that a notice recommending termination of an employee to the board without notice to the employee of employee's right to attend and dispute the claims violated due process), *recognized in Lobato v. N.M. Env't* Dep't, 2012-NMSC–002, ¶ 13, 267 P.3d 65. There is at least one instance when *eventual* notice was deemed constitutionally sufficient in the administrative context because claimant was not deprived of an opportunity to be heard by participating in the proceeding. In *Uhden v. N.M. Oil Conservation Commission* a lessee of oil and gas interests provided notice by publication of two adjudications purporting to increase well spacing on a landowner's property, which the landowner did not receive, and subsequently the landowner did not attend or participate in the hearing. 1991-NMSC-089, ¶¶ 4,5, 112 N.M. 528, 817 P.2d 721. However, three months later the lessee notified the landowner of two resulting orders and retained subsequent royalty payments to offset the overpayments. *Id.* ¶ 5 The landowner filed an application for a hearing to obtain relief from the two orders. *Id.* The landowner attended and participated in that hearing and a third order was issued denying her application for relief. *Id.* ¶ 5. In the subsequent appeal to this Court, we declared the first two orders void reasoning that service by publication in that context violated due process requirements of reasonable notice. *Id.* ¶ 13. As to the third order, this Court stated, "We do find that Uhden

19

eventually had notice and an opportunity to be heard on the issue of spacing . . . " *Id.* The Court determined that eventual notice coupled with the ability to participate in the proceedings met the requirements of due process. *See Id.* ¶¶ 10, 13.

{28} Even though Garduño did not receive notice of her employer's appeal for 130 days, we cannot conclude that the risk of erroneous deprivation of unemployment benefits is unnecessarily high as a consequence of the procedures utilized by the Department. In this case, the Department completely adhered to the protocols outlined in the Unemployment Compensation statutes and accompanying regulations as described in *Millar*, including not ceasing payments without prior notice and an opportunity to be heard. *See Millar*, 2013-NMCA-055, ¶¶ 7-9; *see also* 11.3.300.308(E) NMAC (1/1/2003) ("Once an initial determination is made and payment of benefits is begun, payments shall not be stopped without prior notice and an opportunity to be heard.". The erroneous deprivation that Garduño alleges would occur during the delay in the decision of a second-tier appeal which could reverse the initial determination. But prior to and during the appeal, Garduño was receiving her benefits and was deprived of nothing. Moreover, during the appeals process, Garduño was afforded abundant process that included a hearing and opportunities to obtain counsel, present evidence, and confront and cross-examine adverse witnesses.

**2. Probable value of earlier notice or of additional or substitute procedural safeguards**

{29} We next examine any possible value of the additional safeguards proffered by Garduño. Garduño argues that she should have received an earlier notice and hearing. Inherent in this question is whether the outcome would have been different if the Department had provided the additional process Garduño requests. *Cf. State ex rel. Children, Youth & Families Dep't v. Christopher B.*, 2014-NMCA-016, ¶ 7, 316 P.3d 918 ("[I]n order to show a denial of due process, we do require the [claimant] to 'demonstrate that there is a reasonable likelihood that the outcome *might* have been different[]' had the denied procedure been afforded." (Third alternation and emphasis in original) (internal quotation marks and citation omitted)).

{30} Garduño relies on *Waters-Haskins v. Human Services Department, Income Support Division* to argue that DWS's late notice of the pending appeal amounted to "a false representation or concealment of material facts," which implied "'representations that are contrary to the essential facts to be relied on, even when made innocently or by mistake'." 2009-NMSC-031, ¶ 24, 146 N.M. 391, 210 P.3d 817 (citation omitted) (holding that because the agency clearly knew of claimant's ineligible status but continued to pay her food stamp benefits for eight years while the claimant had no way of knowing she was ineligible, the agency was estopped from

later attempting to recoup the paid benefits). In that case, this Court applied a theory of equitable estoppel, an issue which Garduño does not argue on appeal. Further, the *Waters-Haskins* holding is not dispositive because Garduño was made aware of the possibility of appeal and of the possibility of having to pay back benefits should she lose on appeal. The notice to Garduño stated, "If your employer challenges a decision allowing benefits to you and the appeal decision is against you, you will be required to repay those benefits." Garduño appears to be making an equitable estoppel argument couched in procedural due process; however, because Garduño did not cross-appeal the Court of Appeals' adverse equitable estoppel determination, the issue is not before us.

{31} Here, the delayed notice of appeal Garduño received is more analogous to the eventual notice received in *Uhden*. Despite the delay, Garduño still received notice of the hearing and appeal prior to the hearing, and the delay did not prevent Garduño from attending and participating in the DWS appeal hearing. *See* 11.3.500.10(A)(1) NMAC (1/1/2003). At the appeal hearing, the ALJ heard testimony from Garduño, the store manager, an employee, and the store's loss prevention investigator; and the ALJ considered evidence consisting of written statements, policies, receipts, and surveillance video. Like *Uhden,* Garduño was not deprived of an opportunity to be

22

heard on the issue of repayment of unemployment benefits.

{32} The Minnesota Court of Appeals considered a due process argument similar to Garduño's and added another element requiring notice of the interest at stake. In *Schulte v. Transportation Unlimited, Inc.*, a discharged employee received notice of a hearing requested by his employer to challenge the unemployment benefits he had already received. 354 N.W.2d 830, 831 (Minn. 1984). Because the employee was reemployed before the hearing and was not informed of the potential requirement of repayment upon reversal of the initial decision to award benefits, the employee did not attend the hearing. *Id.* at 831-32. The Minnesota Court held that the notice was "affirmatively misleading" and resulted in a denial of due process because it failed to communicate the interest at stake. *Id.* at 835; *see also Dilda v. Quern*, 612 F.2d 1055, 1057 (7th Cir. 1980) (holding a due process violation for lack of notice of the possible decrease in a food stamp allotment because notice did not meaningfully inform persons so they could protect their interest)).

{33} Garduño's case is more like cases from the Court of Appeals of Minnesota that distinguish *Schulte* where the Court ultimately held that there was no constitutional violation when the employee *did* participate in the hearing. *See Comm'r of Nat. Res. v. Nicollet Cty. Pub. Water/Wetlands Hearings Unit*, 633 N.W.2d 25, 30 (Minn. Ct.

23

App. 2001) (affirming an appellate denial of the appellant's due process claim based on constitutionally valid notice of the hearing because the appellant knew the potential consequences of a reversal of the initial decision and participated in the appeal with counsel); *see also Aubin v. Family Dollar, Inc.,* No. A14-0483, 2014 WL 6724937, at *4-5 (Minn. Ct. App. Dec. 1, 2014) (holding that online system of appeals did not violate due process rights because it "was not affirmatively misleading" and it adequately explained the "potential consequences" of failing to file a timely appeal (citations omitted)); *Koch v. Sheldahl*, No. A03-1562, 2004 WL 1878786, at *4 (Minn. Ct. App. Aug. 19, 2004) (determining that employee was not entitled to notice of consequences of losing an unemployment benefits appeal until she received notice that the employer had, in fact, appealed and concluding that when faced with the decision of whether to participate in the appeal, the employee also had notice of the consequences of losing an appeal thus there was no due process violation). In Garduño's case, like the *Nicollet* case, the late notice did not prevent Garduño from participating in the appeal hearing. The facts also indicate that Garduño, like *Nicollet* was given notice of the potential consequences of losing an appeal. Garduño's participation in the appeal hearing coupled with her notice of the potential consequences was not "affirmatively misleading."

24

**{34}** Even though Garduño was unaware of her employer's appeal for a substantial time, Garduño's argument overlooks that the notice of claim determination dated March 12, 2010 stated that "[i]f your employer challenges a decision allowing benefits to you and the appeal decision is against you, you will be required to repay those benefits." Further, the August 3, 2010, notice of hearing the Department mailed to Garduño informed Garduño of the issues to be addressed, including the issue of whether she left her employment without good cause or was discharged for misconduct. The notice contained references to the legal and regulatory bases related to those issues. The notice included information required by the regulations meant to inform Garduño of the issues to be addressed so she could prepare for the hearing. *See* 11.3.500.9(D) NMAC; 11.3.500.9(D)(1), (3) NMAC.

**{35}** We are not persuaded that there was probable value to Garduño 's proffered additional procedural protection in receiving earlier notice. The requested additional procedures would not have changed the outcome of the final eligibility determination. Garduño was discharged from employment for her own misconduct, and no amount of time would have permitted her to show otherwise. Indeed, before the district court, Garduño's counsel acknowledged that the Department's eligibility decision was probably correct. Additionally, Garduño cannot prove that earlier notice would have

led to a smaller overpayment debt where, even after she received actual notice of the appeal, she continued to collect benefits voluntarily increasing the risk that she would have a higher overpayment debt.

{36} There would be no added value in a speedier notice and hearing where it would not have afforded additional protections from an erroneous deprivation of the continuation of benefits or from a wrongful order to repay benefits. The Court of Appeals in this case failed to view the process as a whole by focusing on the lack of a specific type of notice and not considering the abundant process and safeguards afforded to Garduño. Accordingly, the late notice did not violate due process.

{37} We also note that the Department has the legal right to recoup overpaid benefits, even those benefits mistakenly overpaid by the Department. *See, e.g.*, *Ellender v. Schweiker*, 575 F. Supp. 590, 593, 600 (S.D.N.Y. 1983) ("We do not question the Government's legal right to collect back all legitimate overpayments of [Federal Supplemental Social Security Income] benefits from recipients who are presently able to repay their debts after they obtain their full [Social Security] checks."); *see generally* Section 51-1-38 (describing a claimant's liability for unemployment benefit overpayment).

**C.    The Government's interest includes the function involved and the fiscal**

26

**and administrative burdens that the additional or substitute procedural requirement entails**

{38} The third factor of the *Mathews* test is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. *Mathews* described this factor as a consideration of "the public interest" which includes "the administrative burden and other societal costs" associated with providing the proposed additional procedural safeguards. *Id.* at 347. In discussing this test, *Mathews* looked both to the financial burden on the administration and to the effect the costs of additional procedures for undeserving recipients may have on deserving recipients. *Id.* at 347-48. The Department argues that the government's interest at issue here is in recouping benefits erroneously paid to claimants who did not deserve them. We disagree. The added procedural safeguards Garduño requests are more timely notice and hearing. Thus, we must determine the added burden on the Department to provide a more timely notice and hearing. It appears to us that the added burden of notifying claimants of an employer's appeal sooner is minimal. Significantly, the Department does not contest our conclusion. In fact, at oral argument before this Court, the Department stated that claimants are currently

provided with notice of appeal and an appeal hearing much sooner than occurred in Garduño's case.

{39}     While the private interest in the continuation of benefits is important, there is a very low risk of erroneous deprivation under the procedures utilized by the Department. The interest in the continuation of benefits was attenuated where Garduño received benefits through the first level of administrative appeal. Unemployment benefits hearings must comport with due process and be conducted in such a manner as to ascertain the substantial rights of parties; fundamental fairness is the essence of due process. More specifically, a claimant is entitled to a full, fair, and impartial hearing which conforms to the fundamental principles of due process and which includes the right to confront and cross-examine witnesses. In this case, the Department provided and Garduño received adequate notice and a fundamentally fair, full, and impartial hearing.

**IV. CONCLUSION**

{40}     Garduño was not deprived of a protected property interest where she continued to receive benefits up until it was determined that she was ineligible for the benefits. The Department's late notice of a pending appeal did not deprive Garduño of due process of law where the late notice neither prejudiced her ability to defend against

the employer's assertion that she had been fired for misconduct nor prejudicially delayed her merits hearing.

{41}    **IT IS SO ORDERED.**


_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**


_____

**BARBARA J. VIGIL, Chief Justice**


_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**RICHARD C. BOSSON, Justice, Retired**
**Sitting by Designation**

29